# Cooper v. Lindsay.

*Bill in Equity to Declare and Enforce Trust of Legal Title to Land.*

1. *Estoppel, as between distributees of estate of decedent.*—Where, in the division of the estate of a decedent, a note due the estate was allotted to one of the distributees as her share in the estate, to secure which she subsequently took from the maker a mortgage on land, and, on foreclosure, purchased the land for the debt, another distributee, who was an infant at the time of the said division, whose share in the estate was paid to her guardian in money, is not, because she has had the benefit of the money so paid to her guardian, estopped to claim an interest in said land adverse to the mortgagee.

2. *Sale of land by vendor as administrator of purchaser; estoppel, as affected by doctrine of caveat emptor.*—If the vendor of land, having retained the legal title, or having a lien for the unpaid purchase money, becomes himself the administrator of the purchaser's estate, and sells the land as administrator, under a decree of the Probate

[Cooper v. Lindsay.]

Court, for the payment of debts, giving no notice of his own lien or title, he will be held estopped in equity from afterwards asserting it against the purchaser at that sale, who had no actual notice of it, or against his privies,—the doctrine of *caveat emptor* with respect to judicial sales not operating to prevent the purchaser at such sale, or his privies, from invoking the doctrine of estoppel in such case.

3. *Same; effect and operation of estoppel*—An estoppel upon one who, as the administrator of the estate of a decedent, under a decree of the Probate Court, sells land for the payment of debts of the estate, from setting up against a purchaser at such sale a lien in his own favor upon such land, of which such purchaser had no notice, does not operate to actually pass, as by grant, a greater title than the decedent possessed. but merely to prevent such administrator, and those claiming under him. from being heard to assert that the decedent possessed anything less than an absolute, unincumbered fee in the land.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. THOMAS COBBS.

The facts of this case, with the exception stated in the opinion, are the same as those disclosed in the report of the case on a former appeal.—94 Ala. 170. Upon the submission of the cause on the pleadings and proof, the Chancellor decreed that the complainant was entitled "to receive a conveyance of the legal title to a one-third undivided interest [in the land in controversy] by those respondents in whom it is now vested, and that the respective parties make a conveyance of the same to the complainant, * * * and that the complainant is entitled to receive one third of the rents of the land." From this decree the respondent appeals, and assigns the same as error.

PETTUS & PETTUS, JACKSON & SAWTELLE, J. W. COOPER, and ROULHAC & NATHAN, for appellant, filed a written argument, in which they cited the following authorities: *Robertson v. Bradford*, 73 Ala. 117; *Ellis v. Ellis*, 84 Ala.; *Woodstock Iron Co. v. Fullenweider*, 87 Ala. 586; Bigelow on Estoppel (3rd ed.), p. 516; Herman on Estoppel, pp. 923, 1074, 1232. 1288; *Post v. Post*, 13 R. I. 495; *Parmlee v. McGinty*. 52 Miss. 103; *Moore v. Hill*, 85 N. C. 218; *Sloan v. Frothingham*, 72 Ala. 605; *Wilson v. Holt*, 91 Ala. 210; *Burns v. Hamilton*, 33 Ala. 210; Rorer on Judicial Sales, §§ 174, 476, 528; *Wilson v.*

[Cooper v. Lindsay.]

*Holt*, 83 Ala. 539; *Barclift v. Lillie*, 82 Ala. 319; *Thames v. Rembert*, 63 Ala. 561.

J. B. MOORE, *contra*.

HEAD, J.—Upon the former appeal in this case (*Lindsay v. Cooper*, 94 Ala. 170), in reversing the decree of the chancellor, who had denied relief to the .complainant, we held: *First*, that there was. an estoppel upon W. H. Price, by reason of the facts stated in the opinion, to deny that by the sale of the land in controversy, at which Thomas E. Winston became the purchaser, there passed anything less than an absolute, unincumbered fee; *Second*, that the defendants who were in possession, claiming under Price and through a purchaser at a judicial sale, were bound by said estoppel as fully as Price was; and, *third*, that the right of the complainant to maintain the bill was not affected and could not be defeated by any claim of *laches*, the statute of limitations, or the doctrine of prescription. Upon the remandment of the cause, an amendment was made to the answer of Mrs. Cooper, who now prosecutes this appeal, and this amendment presents the only new feature of the case. In all other respects the record is conceded to be substantially the same as upon the former appeal. This amendment may be disposed of in a few words. Briefly stated, it sets up that, upon a voluntary division, without administration, of the estate of Judith M. Winston, deceased, made by her adult children, there was allotted to the complainant, a grand-daughter, (and paid to her guardian for her benefit, she being then a minor of tender years) a sum of money, and to the defendant Mrs. Cooper, as for her share in said estate, a note of one Murdock, upon which she indulged him, and to secure which she took from him a mortgage on the land in controversy. This mortgage she subsequently foreclosed, and at the sale she purchased the land for the debt. These facts are made the basis for the argument that complainant is estopped, because she had the benefit of the money paid her guardian, to take from Mrs. Cooper any part of the land she claims through Murdock, and the mortgage foreclosure. The proposition is thus stated by appellant's counsel: "The contention made by her amended answer is, that after the

[Cooper v. Lindsay.]

complainant below, as one of the children of Thomas E. Winston, had received the equivalent of that debt of Murdock in actual money, while appellant took that debt for an equal amount in a division, where the character of the rights of both were equal and alike, she is estopped in equity from retaking any portion of that division from others of the distributees." A full and complete answer to this is, that the complainant is *not* seeking to retake from the appellant any portion of that division, as counsel erroneously suppose. Mrs. Cooper, by the division, did not procure this land, but Murdock's note, and it was her own folly and misfortune if she surrendered that indebtedness in exchange for land to which Murdock did not have a perfect title, but which belonged in part to the complainant. The foundation stone of the argument being thus withdrawn, the superstructure erected thereon falls to the ground for want of necessary support. Certainly, no one would seriously contend, that because one distributee accepted a note of a third person as her share of an estate, and allowed a sum of money to be paid to another distributee for the latter's share, this would authorize the former, without the knowledge, consent or participation of the other distributee, to take the land of the latter, from the maker of the note, in payment thereof, even when both distributees were adults. Much less could such a contentoin be made when, as here, the distributee to whom money was allotted was an infant, having no connection with the division of the estate, or with the indulgence granted to the debtor or with the taking of the mortgage, or with the purchase of the land at the foreclosure sale, all of which were the voluntary acts of the appellant. It is too clear for controversy that the complainant can not be turned into a warrantor of Murdock's title, nor into a guarantor of the collectibility of the Murdock note, nor, upon any known principle of law, be estopped, by anything set up in the amendment, from recovering her land from the appellant. Obviously the amendment showed no defense to the bill.

The case is, therefore, before us in the same plight as at the former hearing in this court, and, if the opinion we then announced be adhered to, an affirmance of the decree from which this appeal is prosecuted must follow. That opinion, delivered by Justice McClellan, fur-

nishes internal evidence of careful consideration and extensive research. Upon application for rehearing, it again received the sanction and approval of the court, and we now have no reason to doubt its correctness. Since an elaborate argument, however, has been made by appellant's counsel, in an effort to show that the first two propositions therein decided do not harmonize, and that the second principle of law therein laid down is virtually destructive of the first, or, at least, shows that the principle of estoppel was inapplicable, under the facts of the case, to the purchase by Thomas E. Winston at the sale of Price as administrator of Walker's estate, we will undertake to point out the error of this contention, which seems to form the chief reliance of appellant for a reversal of our former ruling and of the chancellor's decree, based thereon.

In order to show that the defendants, who claimed under Price and through Barton, a purchaser at a judicial sale, were not entitled to protection as innocent purchasers for value, in good faith, without notice (waiving a direct decision on the question upon which the court was divided, whether mere privity with him who is estopped is sufficient to bind the party by the estoppel, notwithstanding good faith, want of notice, and payment of a valuable consideration), we used this language : "Our conclusion that the respondents are bound by the estoppel which rested on Price will be rested upon another consideration. They are purchasers, it is true, in good faith, without actual notice, and for value. They are also, however, purchasers at a judicial sale, the sale made by Price's administrator to Barton in 1872, under an order of the probate court. To such sales the rule of *caveat emptor* applies in its utmost vigor and strictness. The court orders the sale, in such cases, only of such interest and estate and rights in the premises as he had and could have asserted ; no more, no less. The purchaser succeeds to his rights and attitude in respect of the property sold, 'takes his shoes,' stands in his place, acquires his interest as the same existed in his hands, subject to all infirmities of title then attaching to the estate, and to all equities, known or secret, which operated a limitation upon the nominal or apparent estate of the intestate in his lifetime. The purchaser buys at his peril ; he takes upon himself the risks of any out-

standing rights that could have been asserted against the decedent; and if, by reason of the existence of such rights, whether known or not, or discoverable or not, he takes nothing by his purchase, he cannot complain."

The foregoing extract from the opinion is now cited by counsel for appellant, with the suggestion that Thomas E. Winston was himself a purchaser at a judicial sale, and that, therefore, the same rule and its logical result would apply to his purchase at the sale of the interest of Walker's estate by Price, the administrator. Pursuing the argument, counsel ask a *series* of questions in reference to said purchase by Winston, as follows: "What prevents the doctrine of *caveat emptor* from applying to his purchase and to all those who were privy in blood or estate to him? Did Winston succeed by his purchase at that judicial sale to anything more than the decedent's rights and attitude in respect of the property sold? Did he not take the decedent's shoes, stand in his place, acquire his interest as the same existed in his hands, subject to all infirmities of title then attaching to the estate, and to all equities known or secret, which operated a limitation upon the nominal or apparent estate of the intestate in his lifetime?" These questions are followed in the brief by the following reasoning: "'The sale of the interest of Walker's estate, through which Winston only can claim, was made by the court. It could order in such cases the sale of only such interest and estate and rights in the premises as he (the deceased) had and could have asserted, no more, no less. If this doctrine be sound, and no one can question it, then we have the respective sides to this controversy standing upon the same level, at least in this respect. The conflicting titles are each and both derived through judicial sales, to both of which alike the rule of *caveat emptor* applies. Then neither can claim any advantage over the other by virtue of this rule, unless, as we have said, the rule depends for its efficacy and effect, not upon the naked fact of its application here to judicial sales, as all the authorities insist it does, but varies as to the *personnel* of the representative." The answer to all this is not difficult. No one doubts for a moment that Winston was a purchaser at a judicial sale, and that, in a controversy with any one in a position to raise the question or institute an inquiry into the extent of Walker's interest, it

world be held that the purchaser succeeded to such right or estate as Walker really possessed. But the vice of the argument of appellant's counsel, at this point, lies in the fact that they have overlooked the true nature and effect of the *estoppel*, which does not operate to actually pass, as by grant, a greater title than the decedent possessed, but merely to prevent the appellant from being heard to assert that Walker possessed anything less than an absolute, unincumbered fee in the land. "An estoppel is the preclusion of a person from asserting a fact, by previous conduct, inconsistent therewith, on his own part, or the part of those under whom he claims, or by an adjudication of his rights which he cannot be allowed to call in question."—7 Am. & Eng.Ency. of Law, p. 1. Thus we said in our former opinion: "The effect of the estoppel on Price individually was not to pass the title out of him into Winston; and that the title having passed into the respondents now in possession, the operation of the estoppel on them has not been to divest the legal title out of them and to vest it in Winston's heirs, but only to prevent an assertion of it by them against the complainant, who is entitled, moreover, to whatever rights would have been hers, had Price in fact had no title to or claim upon the land, as he led her ancestor to believe."

The exact advantage which the complainant enjoys over the defendant here is that she is in a position to institute an inquiry into the extent of his title, which Barton procured by his purchase, while the defendant, bound by the estoppel, will not be heard or permitted to question Walker's absolute ownership, or to set up any rights founded upon the claim or lien which Price had at the time of his sale to Winston. The question here is, not so much what Walker actually had, but what estate Price led Winston to believe he had. There is, therefore, no inconsistency between the two positions taken by the court in this case. No reason can be given why the doctrine of *caveat emptor* may not have full play with respect to judicial sales, and, at the same time, the doctrine of estoppel be successfully invoked in a proper case, in favor of a purchaser at such sale. The argument of counsel to which we have adverted, when forced to its logical conclusion, would drive them into maintaining the proposition that, be-

cause an intending purchaser at a judicial sale stands in a position of great peril, with no warranty and without the protection usually accorded innocent purchasers, therefore, all others, having conflicting or superior claims to the estate to be sold, are at liberty to mislead or deceive him, with impunity to themselves and injury to him, either by false assurances of the goodness of the title he proposes to buy, or by wilful silence, when every consideration of right demands the assertion of the superior claim.

As thus stated, we doubt if counsel would seriously contend for the proposition, and for such a position we are quite sure there is no authority. Certainly full scope can be given to the rule of *caveat emptor* without requiring such consequences.

The decree of the chancery court is affirmed.