(123 So. 79)

**JACKSONVILLE PUBLIC SERVICE COR-PORATION v. CALHOUN WATER CO. et al.   (7 Div. 895.)**

Supreme Court of Alabama.   June 20, 1929.

James F. Matthews, of Anniston, for appellant.

Knox, Acker, Sterne & Liles, of Anniston, for appellees.

SAYRE, J. January 1, 1909, the Jacksonville Oil Mill Company, a corporation, did "grant, bargain, sell, alien and convey" to the Calhoun Light & Power Company, a corporation, "All the wire and pole lines, cut-in, wires, transformers, meters, arc lamps and fixtures; also the reservoir, dam and water system now owned by and in possession of the party of the first part and used in the electric light plant which the party of the first part has heretofore operated in the city of Jacksonville, Alabama,. together also with the following other machinery located in the power plant of the party of the first part, established for the purpose of operating said electric light plant above referred to, which machinery is more particularly described as follows, "to-wit:"—here follows a list of twenty items of machinery such as are used in an electric plant—"together also with the building in which the electrical supplies for said plant is (sic) located; but the ground on which said building is located is not sold, neither is (sic) any other lands or buildings than the one just mentioned sold or conveyed hereby," in fee simple. This conveyance concluded as follows: "In testimony whereof the party of the first part," the oil mill, "has caused this conveyance to be executed in its name by George P. Ide, its President, this the day and year first above written. [Signed] Jacksonville Oil Mill Company, by Geo. P. Ide, President."

It is further averred that George P. Ide was seized and possessed of the lot or tract of land, describing the same, on which is located the aforementioned dam, together with a pipe line therefrom, constituting a part of the water system aforesaid, and constituting also a part of the electric light plant of the oil mill company, and that he, "being also an officer and stockholder of said Jacksonville Oil Mill Company and largely interested in its affairs, caused or allowed said company to erect the dam, * * * and also caused or allowed the pipe line aforesaid to be laid from said dam through said land for the purpose of conducting water accumulated on said land to the aforementioned reservoir of said Jacksonville Oil Mill Company for the use aforesaid; and thereafter in his capacity as President of said company did execute, acknowledge and deliver the deed of conveyance dated the 1st day of January, 1909."

It is averred:

That Ide was active in negotiating a sale of bonds secured by a mortgage of the tract of land and the machinery described in complainant's muniment of title as stated above and executed by the Calhoun Light & Power Company;

That defendant claims title through Ide, that is, through proceedings in which Ide was declared a bankrupt and his property sold to satisfy the claims of creditors;

That no suit was pending, etc., thus bringing the cause under the influence of section 9905 of the Code, which authorizes a bill in equity to clear up doubts or disputes concerning the title to land.

Appellant, Jacksonville Public Service Corporation, claiming in succession to the title of the oil mill—so to speak of the Jacksonville Oil Mill Company—by its bill in equity, filed January 28, 1919, as last amended, December 28, 1928, concluded with a prayer that the court would "ascertain and decree that complainant has a perpetual right, privilege and easement to use, enjoy and maintain and possess that certain reservoir, dam and water system, conveyed by Jacksonville Oil Mill Company to Calhoun Light & Power Company including a pipe line from said dam to said reservoir, as the same was enjoyed, used, maintained and possessed by the Jacksonville Oil Mill Company on and prior to January 1, 1909, in connection with the operation of its electric light and power plant in the city of Jacksonville, Alabama, conveyed by it to Calhoun Light & Power Company by deed dated January 1, 1909."

The purpose of appellant's bill is to establish a title by estoppel in an easement, affecting the ten-acre tract of land described in the bill, the property of defendant, viz., the right in perpetuity to have water impounded on defendant's land and to have it conveyed to appellant's plant through a pipe line laid across that land—a permanent interest in the realty.

"An easement always implies an interest in the land in or over which it is enjoyed." "It lies not in livery, but in grant,. and a freehold interest in it cannot be created or passed * * * otherwise than by deed." Hicks v. Swift Creek Mill Co., 133. Ala. 411, 31 So. 947, 57 L. R. A. 720, 91 Am.. St. Rep. 38 (an action at law); Washburn on Easements (4th Ed.) '6. There was no deed from Ide to appellant's predecessor in

title, nor does appellee trace its title back to the oil mill, and consideration of these facts suffices to enforce the conclusion that appellant has failed to sustain its contention for an easement by deed whether appurtenant or in gross. But, as our statement of appellant's bill has disclosed, Ide executed the deed—so to speak of the instrument of January 1, 1909, though it seems to have been hardly more than a bill of sale because the ground, on which the subjects of the so-called deed were located, was expressly excepted—in his representative capacity as president of the oil mill company, and this recorded deed, in connection with the physical presence of the dam, reservoir, and pipe line, it is argued, gave notice to appellee, claiming through him, of the easement claimed by appellant, and estopped appellee as effectually as if the deed of the oil mill company had been executed by Ide individually. Indeed, the whole merit of appellant's bill depends upon the last-stated contention.

The authorities cited by appellant do not sustain its contention. Rutherford v. McGee (Tex. Civ. App.) 241 S. W. 629, alone requires specific attention. In that case, as well as in the other Texas cases cited to sustain it, except perhaps Ford v. Warner (Tex. Civ. App.) 176 S. W. 885, where there was a conveyance by an attorney in fact for his principal, the grantor owned an interest in the property conveyed, a life estate for example, or the administrator, an heir, was a beneficiary of the sale for the reason that the proceeds of the sale were applied to the satisfaction of charges against the estate. Millican v. McNeill, 102 Tex. 189, 114 S. W. 106, 21 L. R. A. (N. S.) 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74. The Texas court appears to realize that a different rule prevails in at least some other jurisdictions, and it quotes Devlin on Deeds (volume 3, § 1280) as follows: "A deed can bind a party by way of estoppel only in the capacity in which he executed it. One who executes a deed as the attorney in fact for another is not precluded from subsequently setting up a title to the land, which had been acquired by him prior to the execution of the deed from the person for whom he acted as attorney in fact"— citing Smith v. Penny, 44 Cal. 161. Other adjudications to the effect that such a conveyance does not operate as an estoppel are shown in the note under the leading Texas case (Millican v. McNeill) as reported in 20 Ann. Cas. 77.

In Lindsay v. Cooper, 94 Ala. 170, 11 So. 325, 16 L. R. A. 813, 33 Am. St. Rep. 105, a case of peculiar complication and difficulty, the result of the court's consideration is very well expressed in the headnote as follows:

"If the vendor of land, having retained the legal title, or having a lien for the unpaid purchase-money, becomes himself the administrator of the purchaser's estate, and sells the land as administrator, under a probate decree, for the payment of debts, giving no notice of his own lien or title, he will be held estopped in equity from afterwards asserting it against the purchaser at that sale, who had no actual notice of it, or against his privies; and this estoppel is equally operative against the heirs of the vendor, and against all subsequent claimants under him, unless there be an exception in favor of a purchaser for valuable consideration without notice, as to which no opinion is expressed."

But the estoppel there declared was an estoppel in pais, an equitable estoppel, not an estoppel by deed. Nor can an estoppel by deed be located in the record of this cause. The deed under which appellant claims the easement in question was subscribed and executed by "Jacksonville Oil Mill Company, by Geo. P. Ide, President," and Ide's acknowledgment was that "he as such officer and with full authority executed the same voluntarily for and as the act of said corporation." By this method of executing the conveyance Ide did not bind himself individually, this because "a deed can bind a party by way of estoppel only in the capacity in which he executed it." Devlin, supra.

But appellant insists upon an estoppel in pais, an equitable estoppel, the facts from which such estoppel is inferred being that Ide—as we have noted, appellee claims under Ide—as president of the oil mill company, executed the deed of January 1, 1909, and at and about that time was active in negotiating the sale of bonds by the grantee therein, the Calhoun Light & Power Company, secured by mortgage on the property conveyed by the deed, viz., the "reservoir, dam and water system" along with the other property therein described. The effort is to build up an estoppel against Ide the benefit of which will accrue to appellant. The theory is that the conveyance, back to which appellant traces title, must be construed as the conveyance of a plant for the manufacture of light and power, to the integrity of which the "reservoir, dam and water system" were essential, rather than as a mere aggregation of brick, motor, and machinery to be dismantled and destroyed as an organized and efficient entity at the will of the landowner. At law, as we have seen, the statute of frauds stands in the way. In equity there may be an estoppel affecting the legal title to land; but, to that end, the following grounds must appear: "1. There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was

done, *and at the time when it was acted upon by him.* 4. The conduct must be done with the intention, or at least *expectation,* that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse. * * *" 2 Pom. Eq. Jur. (4th Ed.) § 805. The foregoing states the essential elements of estoppel in general. But where it is sought to estop the owner of land to assert his legal title, "it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. *It is opposed to the letter of the statute of frauds,* and it would greatly tend to the insecurity of titles if they were allowed to be affected by parol evidence of light or doubtful character." 2 Pom. Eq. Jur. § 807. Hence the rule that a fraudulent intent, or at least such gross negligence as to afford proof of an intent to deceive, is necessary to an estoppel affecting the legal title to land. Section 807, supra. To complete our statement of the principles of equity necessarily involved in the present case by the quotation of one other frequently cited section of Pomeroy's Equity Jurisprudence—than which, we apprehend, there is no better authority— "The truth concerning these material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to a representation or concealment, but also at the time when that conduct is acted upon by him. If, at the time when he acted, such party had knowledge of the truth, or had means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment." Section 810, supra.

■ The averments of the bill in this cause afford no satisfactory ground for the assertion of an estoppel which would preclude appellee to deny appellant's asserted easement. Appellant knew, of course, that "lands" had not been conveyed to it, for that is the language of the deed under which it claims title. It must be conclusively presumed to have known the relevant law. It knew, therefore, that the conveyance by the Jacksonville Oil Mill Company to the Calhoun Light & Power Company did not operate as an estoppel by deed against Ide and would not so operate against future purchasers from him. Nor was it open to appellant to infer that Ide by his execution of that conveyance as president of the grantor corpora-

tion therein intended to convey any part of his personal interest or title in the land described. There is no averment of concealment, nor of misrepresentation, as to the state of the title that might have misled appellant or its predecessor in interest, nor, indeed, that appellant and its predecessors did not fully understand the meaning and effect of the transaction between the parties to the conveyance, or that it affected the right, title, or interest of Ide as an individual, and, in necessary consequence, nothing to charge his grantee's land with the burden of an easement in favor of appellant. Nor does it appear how appellant may have been deceived to his injury by Ide's activity in negotiating the bonds of the light and power company, or that it was destitute of all knowledge of the true state of the title. Hence our conclusion that appellant's bill was correctly decreed to be lacking in equity, and this conclusion is in full accord with the principles of equitable estoppel declared in Lindsay v. Cooper, 94 Ala. 170, 11 So. 325, 16 L. R. A. 813, 33 Am. St. Rep. 105, and Cooper v. Lindsay, 109 Ala. 338, 19 So. 379, and the numerous adjudications therein cited. In this connection, we note also that the reports in the case of Profile Cotton Mills v. Calhoun Water Co., 189 Ala. 181, 66 So. 50, and 201 Ala. 483, 78 So. 389, involving in part the facts and principles of law and equity here at issue, have been consulted and are now cited as persuasive authority.

The decree sustaining the demurrer to appellant's bill is affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.