JEPPSON v. JEPPSON (SPILKER et al., Intervenors).

No. 7261.   Decided May 31, 1949.   (206 P. 2d 711.)

See 31 C. J. S., Estoppel, sec. 110; 19 Am. Jur. 682.

*LeGrande Backman,* Salt Lake City, for appellant.

*Lamoreaux & Tuft,* Salt Lake City, *William S. Livingston,* Salt Lake City, for respondent.

PRATT, Chief Justice.

Margie Jeppson, plaintiff and respondent, commenced this action to quiet title to certain real property described in the complaint. The court found in her favor, and quieted her title to said property.

The property, described in the complaint, to which title was sought to be quieted, was a part of the land owned by Ephriam Jeppson, during his lifetime. Ephriam Jeppson was the father of Margie Jeppson. The defendant and appellant, in the action is Emelia Larson Jeppson, widow of Ephriam Jeppson, and the intervening defendants are the other sons and daughters of Ephriam Jeppson. They intervened at the instance of the defendant.

Ephriam Jeppson died in 1930. His wife, Emelia Jeppson was appointed as administratrix of the estate in 1934. The property at that time was heavily mortgaged, being the subject of a purchase money mortgage. In addition, there were other outstanding obligations on the property, including a second mortgage. The administratrix petitioned the court for permission to mortgage the premises to Home Owners Loan Corporation, for an amount which would include all of these obligations. Permission was granted, and the property was refinanced. This latter mortgage then amounted to $1,917.63. Nothing was paid during 1934 and 1935 toward the principal of this sum, but small monthly interest payments were made during the entire period.

In February of 1936, the administratrix petitioned the court for permission to sell the real estate. In her petition she recited that since the death of Ephriam Jeppson, there has been no income from the property with which to pay the taxes, water assessments and the interest on the H. O. L. C. mortgage; that at the request of the administratrix, Margie Jeppson, a daughter, made certain itemized payments. These payments totaled some $287.82. The petition then relates that Margie has a valid claim against the estate, that this is the only remaining claim against the estate; that the property has a value of $2,400. She thereupon requested permission to sell the property at a private sale to the highest bidder, and requested that in the event Margie Jeppson was the highest bidder, that she be authorized to apply the $287.82 claim against the estate toward the purchase price of the real estate.

The sale was authorized, and Margie Jeppson was high bidder for the property. She agreed to assume the obligation of the H. O. L. C. note and mortgage of $1,917.63 and cancel and release her claim against the estate in the sum of $287.82, which combined totaled $2,205.45.

Thereafter, Emelia Jeppson, administratrix, petitioned for approval of final account, closing of the estate, and for discharge as administratrix. Paragraph 4 of the prayer of that petition contained the following:

"That the execution and delivery of the administratrix's deed conveying all of the right, title and interest of the said estate in and to said real estate situate in Salt Lake County, Utah, and more particularly described as follows: * * * (description) * * * to Margie Jeppson be approved and confirmed."

The decree of distribution was in identical language in approving and confirming the deed to Margie Jeppson.

Some time after Margie Jeppson had purchased the property from the estate, the State Road Commission purchased a right of way through the property. The proceeds received from the State Road Commission were used to retire the H. O. L. C. mortgage.

Thereafter, on February 15, 1937, Margie Jeppson, at the request of Emelia Jeppson, conveyed a part of the land to her brother Ervin Jeppson, by warranty deed. Ervin Jeppson is an intervening defendant in this suit. This tract of land conveyed totaled some 4.34 acres.

Although there is some evidence of an additional consideration, it appears that a part of the consideration at least was that Ervin Jeppson would repair and remodel the old family home to make it comfortable for the mother, Emelia, to live in. Ervin Jeppson did, in fact, repair and remodel the home. On July 27, 1939, Margie Jeppson conveyed to Emelia Jeppson property upon which the family home was located. This property consisted of just in excess of ½ acre of land together with the home, and was partially fenced property. This tract was selected by Emelia.

A third tract of land, described as the "Snedeger place" was also conveyed by Margie Jeppson. This tract was conveyed to Emelia also, who in turn sold it to Snedeger for $700, which money was paid to Emelia. This tract was also a selection by Emelia, as a part of the property she desired.

These conveyances were testified to by Margie as being for the purpose of satisfying any claims of the mother to the property. It does not appear however, at any time during the interval these property transfers were being made, that the mother ever asserted any claims to the property by virtue of any statutory rights. The claim which the mother appears to have asserted during this time was a moral one, arising out of certain recommendations by their ward bishop, who appears to have counseled with the family.

Of the remaining property purchased by Margie from the estate, one tract was used by Ervin Jeppson as a pasture for his cattle. He paid the taxes on this property in exchange for its use during the years 1941 to ·1945 inclusive. Margie Jeppson testified that the payment of taxes was the consideration for the use of the premises as pasture. Taxes for 1947 were paid by Margie Jeppson. There is some dispute in the evidence as to who paid the taxes for 1946. The pre-trial statement indicates that they were paid by Ervin. Ervin testified that after he paid the taxes each year, he would mail the tax notice to Margie, who was not living at the family home during this time. The other tract remaining of the property was not used apparently except for a small portion which was leased to the Pleasant Grove Canning Company, as a loading dock. This lease was entered into with Margie, and covered a five year period. There is no indication of any objection by any members of the family to this lease agreement.

The theory of the intervening brothers and sisters, as well as one of the theories of Emelia, so far as their answers are concerned, appears to have been, to a large extent, that of a trust for the benefit of the family.

A pre-trial hearing was conducted in the case which eliminated some of the issues and revealed that Emelia Jeppson had never given any deed to Margie Jeppson in other than her capacity as administratrix. It was made to appear also from the pre-trial statement that the intervening defendants claim that Margie took the property as trustee under a resulting trust for the benefit of all the heirs, including herself, and that Emelia claimed her statutory interests.

Upon the trial of the case the court made the following statement as to the questions remaining in the case, which statement was acquiesced in by counsel for both sides:

"The record may show the parties and their attorneys are present in the matter of Margie M. Jeppson, also known as Margie Jeppson Edgel v. Emelia Larson Jeppson and others, and there was a pre-trial in this matter conducted on the 6th day of May, 1948, pursuant to which there is prepared and filed a pre-trial statement concerning the issues in dispute, and it is agreed by counsel that the plaintiff, or, rather, that on behalf of the defendants, that they do not question the probate proceedings; in other words, that they are not going to attempt to go back of the probate sale, that the questions remaining in the case are the widow's statutory interest in the property with respect to which it is claimed that Emelia Jeppson has never divested herself and still owns it; and the other question, that of the possession of the property since the sale in 1936, and the legal effect of such possession; that's correct, is it, gentlemen?"

Nevertheless, considerable testimony was adduced by defendants relative to the theory of a trust, including the deposition of Emelia Jeppson who did not appear in court. If the trust theory was not abandoned upon trial of this cause, it has been abandoned on this appeal. The case is at rest as to the intervening defendants, since they have not appealed from the decision of the lower court.

Only one issue is raised on appeal: Is Emelia Jeppson entitled to her statutory $\frac{1}{3}$ interest as the surviving widow of the decedent? Her argument is to the effect that since she did not sign the deed of conveyance to Margie Jeppson in her individual capacity, that she still retains her $\frac{1}{3}$

statutory interest and that the evidence does not sustain the lower court's findings that Margie Jeppson is the sole legal and equitable owner of the remaining premises; that the evidence does not support the finding that Emelia Jeppson has no right title or interest in the property; and that the evidence does not justify the finding that she is barred and estopped from asserting an interest in the premises.

The surviving widow's statutory rights have been fully discussed by this court in several cases, and need not be further set out here. See *In re Bullen's Estate,* 47 Utah 96, 151 P. 533, L. R. A. 1916C, 670; *In re Kohn's Estate,* 56 Utah 17, 189 P. 409; and *Staats* v. *Staats,* 63 Utah 470, 226 P. 677.

As to the particular point raised by Emelia, as appellant, in her brief, there is some conflict of authorities. See: *Jacksonville Public Service Corp.* v. *Calhoun Water Co.,* 219 Ala. 616, 123 So. 79, 64 A. L. R. 1550, 1556.

Emelia, as appellant, addresses herself exclusively to this point in her brief. This however, does not appear to be the ground upon which the lower court decided against her.

Finding of fact No. 6, by the lower court indicates the basis upon which the decision of the lower court was reached. It reads as follows:

"That the said defendant, Emelia Larson Jeppson, has heretofore received by conveyance from the plaintiff, certain portions of the said real property purchased as aforesaid by the plaintiff, and that such portions were selected by the said defendant and were conveyed without consideration and by such conveyance and the acceptance thereof, the said defnedant is now barred and estopped from asserting or claiming any interest of, in, or to the premises, retained by the plaintiff and heretofore particularly described."

The lower court based its decision upon the fact that Emelia Jeppson had received a fair share of the property in any event, regardless of any possible decision as to her

rights by virtue of not having signed a deed in her private capacity, and only having signed in her representative capacity, and that the property received by her was property which she selected.

In addition to the facts heretofore set out, the following also go to support the judgment of the lower court. Margie Jeppson testified that her mother told her that if she would convey these tracts to her, that she would not ask her for anything again; that she paid for the erection of a fence, the benefit of which was to the mother, and that she paid for materials used in the remodeling of the home conveyed to the mother. The appellant received the benefit of approximately $\frac{1}{3}$ the acreage of property, and at the time of the conveyances to her, what appears to have been at least $\frac{1}{3}$ in value of the property, and made her own selections of tracts to be conveyed. The evidence amply sustains the findings of the lower court that the appellant can claim no further interest in the balance of the property.

As this disposes of the case, the theory of the case advanced by Emelia to the effect that her conveyance as administratrix did not convey her individual interest, need not be discussed.

The decision of the lower court is affirmed. Costs to the respondent.

WADE, WOLFE, LATIMER and McDONOUGH, JJ., concur.