Two of the plaintiffs in this case, Glenn Smith and Peggy Smith, entered into a contract with Mike Norman, d/b/a Norman Construction Company, for the construction of their new home. The other plaintiffs, David Wright and Karlin Wright, similarly contracted with Norman Construction Company for the construction of their *Page 537 
home. Construction on both homes was begun, but neither home was completed. Each set of plaintiffs filed a contract action against Mike Norman, his father Max Norman, and his brother Keith Norman, individually and as partners doing business as Norman Construction Company. Keith Norman was dismissed from both actions on motion of the plaintiffs. Mike Norman filed for bankruptcy, so the proceedings against him were stayed.
The two actions against Max Norman were consolidated for trial. At trial, Norman's motion for directed verdict was granted. Plaintiffs appeal from the trial court's denial of their motion for new trial. We affirm.
The plaintiffs' case against Max Norman is based upon an estoppel theory. The plaintiffs contend that Norman led them to believe he was a partner with his son Mike in Norman Construction Company. They argue that during the construction work on their homes, they made payments to Mike Norman in reliance on Max Norman's representations that he was a partner in the business. Because of this alleged reliance, they assert that Max Norman, although he was in actuality not a partner of his son, should be estopped from denying liability for the losses sustained by the plaintiffs from the alleged poor workmanship and failure to complete their homes. We disagree.
Code 1975, § 10-8-55, in pertinent part, reads as follows:
"Liability of partner by estoppel.
 "(a) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to anyone, as a partner in an existing partnership, or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made who has, on the faith of such representation, given credit to the actual or apparent partnership; and if he has made such representation or consented to its being made in a public manner, he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.
 "(1) When a partnership liability results, he is liable as though he were an actual member of the partnership.
 "(2) When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately."
In Mazer v. Jackson Ins. Agency, 340 So.2d 770 (Ala. 1976), this Court discussed the doctrine of equitable estoppel:
"Equitable estoppel is
 "`". . . based upon the ground of public policy and good faith, and is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence. The doctrine of estoppel is far reaching in its effect, extending to real as well as personal estate, and embracing almost every enterprise in which men may be engaged." [Quoting First Nat. Bank of Opp. v. Boles, 231 Ala. 473, 165 So. 586, 592 (emphasis added in Boles).]
 "The basic elements of equitable estoppel are stated in Dobbs, Remedies § 2.3 (1973):
 "`An estoppel . . . has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.'
 "A more detailed statement of the elements generally required to support an estoppel is given in 3 Pomeroy, Equity Jurisprudence § 805 (5th ed. 1941):
 "`. . . 1. There must be conduct — acts, language, or silence — amounting *Page 538 
to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. . . . 5. The conduct must be relied upon by the other party, and thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forgo or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it. . . .'
 This language is quoted with approval from Pomeroy's fourth edition in Jacksonville Public Service Corp. v. Calhoun Water Co., 219 Ala. 616, 618-19, 123 So. 79 (1929)."
The undisputed facts in this case do not support a cause of action against the defendant based upon the doctrine of equitable estoppel or its statutory counterpart. The plaintiffs bore the burden of proving that they relied to their detriment on the defendant's alleged representations. Webb v. PioneerIns. Co., 56 Ala. App. 484, 323 So.2d 373 (1975). They did not meet this burden.
A directed verdict in favor of a defendant is proper only when there is not a scintilla of evidence to support the plaintiff's claim. Pate v. Sunset Funeral Home, 465 So.2d 347
(Ala. 1984). In this case, there is not a scintilla of evidence that the plaintiffs entered into their contracts with Mike Norman based upon any conduct or declaration by his father. Plaintiff Glenn Smith testified that when he entered into the contract with Mike Norman, he did not think Max Norman was a partner in Mike Norman's business. Plaintiff David Wright testified that he likewise dealt only with Mike Norman and knew of no involvement by Max Norman in the business. Although the plaintiffs allege that there was detrimental reliance in that they made payments to Mike Norman based upon Max Norman's alleged representations, their existing contracts clearly obligated them to make those payments. Had the alleged representations by Max Norman been made prior to or at the time the plaintiffs entered into their contracts with Mike Norman, the decision in this case might be different. Because the alleged representations came after the plaintiffs had obligated themselves to make the payments, however, it cannot be said that they relied upon those alleged representations to their detriment. One jurisdiction with a partnership by estoppel statute similar to ours, New Mexico, has reached this same conclusion under similar facts. In Gilbert v. Howard, 64 N.M. 200, 326 P.2d 1085 (1958), the New Mexico Supreme Court held that where the plaintiffs entered into a rental contract with Howard only, and were later told that Moore was Howard's partner, the plaintiffs could not assert a theory of partnership by estoppel against Moore, since every word or deed connecting the defendant Moore with Howard came five months after the plaintiffs had entered into the contract with Howard; there had been no detrimental reliance. The same reasoning applies in the case before us.
There being no error in the record, the decision of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur. *Page 539