The Circuit Court of Madison County, after hearing ore tenus
evidence, entered a judgment declaring that Thomas S. Ford was not a general partner in Jackson Square, Ltd., an Alabama limited partnership, and that Housing Development Company, Inc. ("HDC"), was the sole general partner in that partnership. Ford appealed. We affirm.
The trial court's judgment reads as follows:
"This matter came before this Court upon the Complaint of the Plaintiffs [Jackson Square, Ltd., and Housing Development Company, Inc.] for a Declaratory Judgment. Prior to the filing of the Complaint, a dispute had arisen between Housing Development Company, Inc., and the Defendant, Thomas S. Ford, as to which of them is the general partner of Jackson Square, Ltd., a Limited Partnership, more specifically the managing general partner of said limited partnership. It was alleged that the Defendant, Thomas S. Ford, had, at a limited partnership meeting on June 4, 1986, attempted to introduce and have passed a resolution, the effect of which would be to remove Housing Development Company, Inc. (HDC), as the managing general partner, and install Thomas S. Ford (Ford) as the managing general partner of said limited partnership. The Plaintiffs' Complaint requested that the Court determine that the Defendant Ford is not a general partner of Jackson Square, Ltd., and has not been such general partner since November 14, 1978. The Plaintiffs further requested that the Court determine that the resolution as presented by the Defendant on June 4, 1986, was improper and ineffective and therefore did not accomplish the removal of HDC as the managing general partner of Jackson Square, *Page 1009 
Ltd. The Plaintiffs further requested that the Court issue an Order prohibiting the Defendant from interfering with the partnership business and/or attempting to destroy the contractual relationship between Jackson Square, Ltd., and Housing Development Company, Inc.
"The Defendant, Thomas S. Ford, filed an Answer and Counterclaim with the Court, essentially alleging that he had properly and effectively removed HDC as the managing general partner of Jackson Square, Ltd., and that he had been properly and duly elected or installed as said managing general partner, with all rights of same accruing to him.
"On September 29, 1978, a Certificate and Agreement (Agreement) of limited partnership for Jackson Square, Ltd., was filed in the Office of the Judge of Probate for Madison County, Alabama. Copies of said limited partnership agreement were before the Court at trial, and the Court looks to said partnership agreement for resolution of the dispute before it.
"According to the Agreement, a general partner may be removed by one of two methods:
"1. ARTICLE 10.2(b): By the determination of 75% of the then Limited Partners' Partnership interests in the Partnership that the General Partner has defaulted in its performance of the duties prescribed in the agreement. This section further requires that the General Partner shall be given notice of such default in writing, specifying the exact nature of the default. This section goes on to set out numerous other events which are required to transpire before the General Partner can be removed. It is undisputed that HDC never received written notice of default from any one or number of the limited partners, so the Court can conclude that HDC was not effectively removed as General Partner pursuant to Article 10.2(b) of the Agreement.
"2. ARTICLE 12: By amendment of the Partnership Agreement Article 12.1 states that: 'Amendments to this Agreement may be proposed by the General Partner or by any Limited Partner.'
"It is undisputed that Thomas S. Ford was never a limited partner in Jackson Square, Ltd. Ford has predicated the validity of all his efforts to replace HDC as the managing general partner upon the assertion that he was and remains a general partner of Jackson Square Limited.
"The threshold question in the controversy then becomes: Was Thomas S. Ford a general partner of Jackson Square, Ltd., on June 4, 1986, the date of the meeting at which Ford attempted to divest HDC of its role as managing general partner and to assume that role for himself? More specifically, was he 'the general partner' as referenced in Articles 12.1 and 15.6 of the Agreement? This Court determines that he was not, and that he therefore had no power or authority to effect a removal or 'replacement' of HDC as managing general partner.
"It is undisputed that at the time of the execution of the Agreement on September 29, 1978, both HDC and Thomas Ford were the only general partners of Jackson Square, Ltd. They are both named in the agreement as general partners in the first paragraph of the agreement, and in Article 6.6 of the agreement. Furthermore, both their signatures appear on the agreement as general partner. Mr. J. Richard Bevill signed for Housing Development Company, Inc., as its President.
"Jackson Square, Ltd., is an FHA sponsored multi-unit apartment complex located in Huntsville, Alabama. The aim of Jackson Square's investors was to raise equity capital through the syndication of a limited partnership (Jackson Square, Ltd.). According to Ford's trial testimony, he, along with three (3) other persons initiated the development of these apartments and began the 'commitment' process with respect to their financing through the Department of Housing and Urban Development and through the Government National Mortgage Association. Ford further stated that he had invested in excess of $50,000.00 in the project prior to any involvement by HDC. Mr. Bevill's testimony reflected that Ford and the other 3 investors had taken *Page 1010 
the commitment process through two stages before HDC became involved.
"In February of 1978, Ford, HDC, and other parties entered into a contract regarding, inter alia, the formation of Jackson Square as a limited partnership, the addition of HDC as a sponsor of the project with the Federal Housing Commissioner, and the installation of HDC as the managing general partner of the project. Ford and others were to remain as general partners. HDC was obligated, among other things, to develop the project and to arrange for its syndication. The terms and conditions of this contract are not the subject of the present action. Suffice it to say that HDC and Ford admit the execution of the contract and it appears, on its face, to be supported by sufficient consideration.
"As stated above, the September 29, 1978, limited partnership agreement named both HDC and Ford as general partners. Ford testified at trial that one reason for this was because the Department of Housing and Urban Development and the Government National Mortgage Association required the initial investor or applicant for commitment (Ford) to be so named, else the financing for the property would be jeopardized. Article 6.6 of the agreement states in part, as follows: 'Upon final endorsement of the project by the Secretary of Housing and Urban Development, Thomas S. Ford shall assign his interest as general partner to Housing Development Company for no consideration.'
"The condition precedent to Ford assigning his interest as a general partner to HDC was the final endorsement of the Jackson Square project by the Secretary of Housing and Urban Development. There is no dispute that such final endorsement took place on November 14, 1979. At that point in time, Ford came under a legal obligation to assign his interest as general partner to HDC. Ford's obligation as stated in the agreement is not conditioned upon any act to be performed by HDC. When one considers all the circumstances and conditions surrounding the negotiations and the stated intentions of the parties, it is obvious that HDC and Ford were relying on final endorsement from the Secretary of Housing and Urban Development in order to obtain permanent financing of the project. Testimony at trial indicated that Ford himself never expected, in 1978, to be or to become the managing general partner of Jackson Square Limited. His own testimony reflects that the naming of him in the limited partnership agreement was for the purpose of satisfying the requirements of the Department of Housing and Urban Development and the Government National Mortgage Association.
"The agreement also states that Ford shall assign his interest to HDC for no consideration. At trial, Ford testified that at the time he signed the agreement in 1978, he was unaware this provision was in the agreement, and he further stated that he never read this agreement — he just signed it. In the absence of any evidence whatsoever of undue influence, fraud, coercion, or of a lack of business sophistication on Ford's part, or any other compelling reason, the Court finds that this provision of the contract is valid and enforceable.
"The Court concludes that on and after November 14, 1979, the date of final endorsement of the project by the Department of Housing and Urban Development, Ford came under a duty to assign his interest as a general partner in Jackson Square Ltd., to HDC for no consideration. It is undisputed that he has never performed this act. It is undisputed that HDC has — never made demand on him to actually execute any such assignment. The agreement itself does not speak to a remedy or contingencies for Ford's failure to so act. Ford contends that, having never demanded of him that he perform his duty under the agreement, after 9 1/2 [sic] years, HDC is now estopped to assert that he possesses no interest as a general partner in Jackson Square Limited. Ford also claims that HDC has knowingly waived its right to insist on Ford's assignment of his interest. He further contends that all actions he took prior to and on June 4, 1986, in an effort to remove HDC as a managing general partner were proper and in accordance with the requisites of the limited partnership agreement. *Page 1011 
"With regard to the estoppel issue, Ford must show that HDC by or through its agents intentionally engaged in a course of conduct which would amount to a concealment of material facts from him such that he relied and acted upon it to his detriment. Jacksonville Public Service Corp. v. Calhoun WaterCo., 219 Ala. 616, 123 So. 79 (1929).
"There was no evidence presented at trial that HDC through its agent or agents acted in such a way as to cause Ford to believe that should he not actually assign his interest as a general partner to HDC in November, 1979, that he would maintain his status as a general partner, or that other benefits of general partnership would inure to his benefit. There is abundant evidence before the Court, some from Ford's own testimony, that after final endorsement in November, 1979, HDC assumed its role as the only managing general partner, that it continued to perform its function as such until June 4, 1986, and since that time to the present day. The evidence reflects that Ford assumed no duties, played no role whatsoever with regard to management of the Limited Partnership property, nor that he at any time presumed that he was to do same or benefit in any way whatsoever from his failure to assign his interest, until he was approached by one or more limited partners who were obviously not pleased with HDC's performance.
"In the absence of evidence of any conduct by HDC toward Ford amounting to fraud or misrepresentation, and in the absence of evidence of any other intervening cause or legal prohibition, Mr. Ford's breach of an express covenant to assign his general partnership interest after final endorsement in November, 1979, cannot be excused. He remains now under a legal duty to so act.
"With regard to the alleged waiver by HDC of its right to insist on Ford's actually executing an assignment of his partnership interest, the Court finds no evidence of any overt words or conduct on the part of HDC which amount to a waiver. One party's waiver of a contractual provision may, however, be implied from the acts and circumstances surrounding the performance of the Agreement. There is abundant evidence from which the Court can conclude that the acts of both parties to the Agreement and the circumstances surrounding its execution (with the exception of Mr. Ford's breach) all indicate that no such waiver by HDC took place. From November, 1979, until June 4, 1986, and to the present, HDC assumed and maintained its role as managing general partner. Mr. Ford neither exercised nor attempted to exercise any of the responsibilities and duties of a general partner or managing general partner, nor did he attempt to claim for himself any of the rights of a general partner until, of course, June 4, 1986. There is no evidence before the Court to substantiate a claim that HDC has intentionally waived its right to insist on Ford's performance of the covenants in the Agreement applicable to him.
"In the absence of any language in the Agreement or in the applicable statute, namely, the . . . Alabama Limited Partnership Act [Ala. Code 1975, § 10-9A-1, et seq.], the Court looks to equitable principles of law to resolve the conflict at hand. Equity regards done, that which should have been done.
"This Court determines that, even in the absence of an actual written assignment or conduct amounting to same, the Defendant, Thomas S. Ford, relinquished any and all rights he possessed as a general partner in Jackson Square, Ltd., and further that those rights vested in Housing Development Company, Inc., on November 14, 1979.
"It is therefore, ORDERED, ADJUDGED and DECREED as follows:
"1. That Thomas S. Ford is not a general partner of Jackson Square, Ltd., and has not been such since November 14, 1979.
"2. That the acts, words and conduct of the Defendant on June 4, 1986, including the introduction and attempted passage of a resolution designed to divest Housing Development Company, Inc., of its role as managing general partner of Jackson Square, Ltd., were improper and had no *Page 1012 
legal effect whatsoever upon the status of Housing Development Company, Inc., as said managing general partner.
"3. That Housing Development Company, Inc., is and remains the sole general partner of Jackson Square, Ltd.
"4. That the relief requested in Defendant's Counterclaim be and it is hereby denied."
(Emphasis in original.)
Ford contends that the trial court erred in its determination that he ceased being a general partner in Jackson Square upon the final endorsement of HUD on November 14, 1979. He argues 1) that he was never subject to the assignment provision contained in Article 6.6 of the limited partnership agreement because, he says, HDC misled him as to the contents of that article; 2) that HDC was estopped to rely on the assignment provision contained in Article 6.6; 3) that HDC had waived its right to enforce the assignment provision contained in Article 6.6; and, 4) that the trial court erred in applying equitable principles to find that he ceased being a general partner on November 14, 1979. We disagree.
Initially, we note that when the trial court has heardore tenus evidence, we presume that its judgment is correct and we will reverse the judgment only if it is found to be plainly and palpably wrong, after a consideration of all of the evidence and after making all inferences that can logically be made from the evidence. King v. Travelers Insurance Co.,513 So.2d 1023, 1026 (Ala. 1987).
Regarding Ford's first argument (i.e., that he was fraudulently induced by HDC into executing the partnership agreement with the assignment provision contained in Article 6.6), the trial court found that Ford was not entitled to be released from his obligation to assign under Article 6.6 on the ground of fraud. Our review of the record indicates that Ford failed to prove that the partnership agreement was anything other than the culmination of a bargained-for transaction. The evidence shows that Ford is a sophisticated businessman who, at the time he executed the partnership agreement, had experience in the syndication of limited partnerships. The trial court's finding is supported by the evidence; therefore, we cannot say that its judgment in this respect is plainly and palpably wrong.
Likewise, regarding Ford's second and third arguments (i.e., that HDC was estopped to rely on the assignment provision in Article 6.6 and that HDC had waived its right to enforce that assignment provision), the trial court specifically found that HDC, through its agent or agents, never did or said anything that would have caused Ford to believe that he would be entitled to remain a general partner following HUD's final endorsement of the project on November 14, 1979. In fact, the trial court found that it was never the intention of the parties that Ford would remain a general partner in Jackson Square and that, following HUD's final endorsement, Ford and HDC conducted themselves as though HDC was the sole general partner. In Mazer v. Jackson Ins. Agency, 340 So.2d 770, 772
(Ala. 1976), this Court stated that the purpose of equitable and promissory estoppel "is to promote equity and justice in an individual case by preventing a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience." See, also, Smith v. Norman, 495 So.2d 536
(Ala. 1986); and Pinkston v. Hartley, 511 So.2d 168 (Ala. 1987). The Court in Mazer went on to further define the elements of equitable and promissory estoppel as follows:
"Equitable estoppel is
 " ' ". . . based upon the ground of public policy and good faith, and is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence. The doctrine of estoppel is far reaching in its effect, extending to real as well as personal *Page 1013 
estate, and embracing almost every enterprise in which men may be engaged." (Italics supplied.)'
 "[First Nat. Bank of Opp v. Boles, 231 Ala. 473, 479, 165 So. 586, 592 (1936)], quoting 21 C.J. § 120 pp. 1117-18.
 "Except for the nature of the conduct on which the estoppel is based, the elements of equitable and promissory estoppel are essentially the same.
 "Promissory estoppel is defined in Bush v. Bush, 278 Ala. 244, 245, 177 So.2d 568, 578 (1964):
 " ' "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement of the Law of Contracts, § 90, page 110.'
 "This principle has long been recognized in Alabama jurisprudence. See Johnson v. Blair, 132 Ala. 128, 31 So. 92 (1901).
 "The basic elements of equitable estoppel are stated in Dobbs, Remedies § 2.3 (1973):
 " 'An estoppel . . . has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.'
 "A more detailed statement of the elements generally required to support an estoppel is given in 3 Pomeroy, Equity Jurisprudence § 805 (5th ed. 1941):
 " '. . . 1. There must be conduct — acts, language, or silence — amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. . . . 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forgo or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it. . . .' [Emphasis in Mazer.]
 "This language is quoted with approval from Pomeroy's fourth edition in Jacksonville Public Service Corp. v. Calhoun Water Co., 219 Ala. 616, 618-19, 123 So. 79 (1929)."
340 So.2d at 772-73.
Waiver, on the other hand, has been defined as the "voluntary and intentional surrender or relinquishment of a known right."Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala. 1984); see, also, City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110
(1967). An intention to waive a right may be found where one's course of conduct indicates such an intention or is inconsistent with any other intention. Braswell Wood Co. v.Fussell, 474 So.2d 67 (Ala. 1985); see, also, 28 Am.Jur.2dEstoppel and Waiver, §§ 158, 160 (1966). Again, our review of the record indicates that the evidence supports the trial court's findings that HDC did not waive, and was not estopped to rely on, the assignment provision contained in Article 6.6 of the partnership agreement. Consequently, the trial court's disposition of these two issues is not plainly and palpably wrong.
Ford's final contention (i.e., that the trial court erred in applying equitable principles to find that he ceased being a general *Page 1014 
partner on November 14, 1979) is also without merit. Ford argues initially that Article 6.6 merely imposed upon him an obligation to assign his general partnership interest to HDC at some time in the future and that he never did so. He maintains that HDC had a legal cause of action for breach of contract and that the statute of limitations applicable to an action for breach of contract had run prior to HDC and Jackson Square's commencing their action for a declaratory judgment. Thus, he insists that "HDC should not now be allowed to set up an equitable maxim to implement a result which it cannot now enforce at law. The equitable doctrine of laches is most aptly applied to this situation." Ford also contends that the trial court's judgment amounts to a "wrongful reformation of a contract," and is "tantamount to [the] removal of [a] General Partner without [an] amendment to the Partnership Agreement."
After correctly concluding that the applicable Alabama statutes dealing with limited partnerships do not provide a vehicle for resolving the dispute in this case, the trial court applied equitable principles in the formulation of its judgment.[1] As we read the judgment, the trial court found that, under the circumstances, it would be inequitable to allow Ford to assert that he had never assigned his partnership interest pursuant to Article 6.6 of the partnership agreement. Both equitable and promissory estoppel were properly raised as affirmative defenses by Jackson Square and HDC in their answer to Ford's counterclaim and at trial. As previously noted, the very purpose of equitable and promissory estoppel is to promote equity and justice in a particular case by preventing a party from asserting rights under a general, technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. Mazer v. Jackson Ins.Agency, supra; Pinkston v. Hartley, supra. The trial court specifically found that Ford had expressly agreed in Article 6.6 of the partnership agreement to assign his partnership interest to HDC upon the final endorsement of the project by HUD and that HDC would be materially harmed (i.e., lose its position as managing general partner) if Ford were allowed to assert a claim inconsistent with his earlier conduct (i.e., a claim that he was a general partner). The record reveals that these findings are supported by the evidence and, thus, they are not plainly and palpably wrong. Furthermore, although the trial court did not specifically find that HDC had relied on the assignment provision contained in Article 6.6 in making its decision to get involved in the project, the trial court could have reasonably inferred from the evidence that Article 6.6 was a material, bargained-for provision in the partnership agreement. Where a trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.Robinson v. Hamilton, 496 So.2d 8 (Ala. 1986). The evidence supports the application of both equitable and promissory estoppel. After finding that Ford was estopped to assert that he had not assigned his partnership interest to HDC, the trial court ruled that an assignment of Ford's interest was effectuated on November 14, 1979, the date of the final endorsement by HUD. The trial court did not err in this regard. "It is . . . well established that, when a court of equity is presented with such facts as warrant, it is fully justified to regard substance rather than form and treat as done that which ought to have been done, if such is necessary to effectuate the true intent of the parties." Newton v. Roe, 290 Ala. 191,275 So.2d 135 (1973).
Briefly, we note that the equitable doctrine of laches does not operate here to bar the action filed by Jackson Square and HDC. "Laches" is defined as neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar. It is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's *Page 1015 
delay in filing suit, and it operates independently of any statute of limitations. It is based on the public policy discouraging stale demands and is not based upon mere lapse of time. The doctrine of laches is applied in a given case to prevent unfairness caused by a party's delay in asserting a claim or by his failure to do something that equity would have required him to do. See Ex parte Grubbs, 542 So.2d 927 (Ala. 1989).
The trial court found that it was not until June 4, 1986, approximately six and a half years after the final endorsement of HUD in November 1979, that Ford sought to exercise any rights as a general partner in Jackson Square. Following HUD's final endorsement of the project on November 14, 1979, and up until he attempted to exercise rights of a general partner in 1986, Ford did nothing to indicate that he considered himself a general partner in Jackson Square. Over the years, HDC apparently assumed from Ford's silence and inaction with regard to the partnership's affairs that he did not consider himself a general partner after November 14, 1979. Jackson Square filed its complaint for declaratory judgment on July 11, 1986, and HDC was joined as a party plaintiff on October 24, 1986. Jackson Square and HDC did not delay in seeking declaratory relief once it became apparent on June 4, 1986, that Ford was attempting to exercise rights as a general partner in Jackson Square.
Furthermore, regarding Ford's contention that the trial court wrongfully interfered in the partnership's affairs, it should be reiterated that in this case neither the partnership agreement nor the applicable statutes dealing with limited partnerships provide a means by which to resolve this dispute. Traditionally, equity has filled the gap in cases of this kind, where there is no adequate legal remedy. Indeed, the application of equitable principles is specifically authorized by statute. See n. 1, supra. The trial court did not err in using its equity powers to intercede on behalf of Jackson Square and HDC in this instance.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] See Ala. Code 1975, §§ 10-9A-202, -203, and 10-8-4.