Plaintiffs appeal from denial of injunctive and declaratory relief sought by their complaint, in which they aver defendants breached a promise to maintain a 100-foot buffer zone between defendants' office park and their residences. We reverse and remand on the basis of estoppel. *Page 771 
In 1955, defendants, Ervin Jackson, Jackson Insurance Agency, and East Lawn Corporation ("Developers") were planning the development of approximately 75 acres in Jefferson County as an office park. Part of the acreage was in the Mountain Brook police jurisdiction and part was in the Homewood police jurisdiction. The Developers decided to try to get all of the property into the city limits of Mountain Brook for their own convenience in dealing with only one city government.
The proposed annexation by Mountain Brook of the acreage within the Homewood police jurisdiction was opposed by the Homewood city government and by residents of Homewood including some of the plaintiffs in this case. Plaintiffs ("Homeowners") are Homewood residents who live on Devon and Poinciana Drives and whose backyards border on the office park area.
In seeking to convince the Jefferson County legislative delegation that it ought to introduce a bill authorizing the proposed annexation, the Developers requested the Mountain Brook Planning Commission to pass a resolution containing certain assurances to the Homeowners. On June 30, 1955, the resolution was passed. It stated, however, that it represented only the present judgment of the Commission and that the Commission ". . . cannot legally bind its present members or its future members on how they will vote on such a matter. . . ." Some of the Homeowners attended the meeting at which the resolution was passed, but there is no evidence that they had actual knowledge of this qualification.
Notwithstanding passage of the resolution, the legislative delegation did not act on the annexation until after the Developers sent a memorandum, dated August 15, 1955, to the adjoining property owners on Devon and Poinciana Drives. (Devon and Poinciana are located, respectively, on the southern and western sides of the office park area.) The memorandum set forth the assurances in the resolution without mentioning that the resolution was not legally binding on the Commission:
 "With reference to the 40 acres which lie west of new Highway 91, ten acres was originally put in Mountain Brook and the other thirty acres we requested to be put in Mountain Brook because that is the only direction in which we can flow traffic and keep it out of a residential area. The Mountain Brook Planning Commission, at our request, passed a resolution that should a change in zoning be granted at a future date, that it would be done only under the three following conditions:
 "1. At least 150 feet adjoining this property on the west and south side of the 30 acres would remain residential property of the same character as the houses adjoining it in Homewood, or,
 "2. That in any change of zoning on this property a buffer zone be maintained of 100 feet along the western and southern portion of the 30 acre tract on which there would be no building or parking permitted, this 100 feet being left in natural woodland, or,
 "3. A variation or change from the above two requirements could be accomplished should at least 90% of the owners of the abutting property agree on any more suitable or more acceptable plan.
 "The reason for Number 3 is this: That it will be our desire and purpose to develop this property in a manner which would be an asset to all of the surrounding property owners and after the studies made by our Engineer and landscape Architect, you, the property owners, may much prefer what we propose than either Numbers 1 or 2, but if there should be a change from Numbers 1 or 2, 90% of you people would have to agree.
 "In requesting that our property be annexed to Mountain Brook, we presented the above facts to the Legislative Delegation so that they might have them in their deliberations concerning the matter.
 "In closing we ask your patience in watching this development. We ask your good will towards us and we feel that *Page 772 
when the job is over, that each occupant of the property on Poinciana and Devon will be very happy indeed over the conclusion. . . ."
The memorandum was signed by Ervin Jackson, one of the defendants in this suit.
After the memorandum was sent, the annexation bill was passed, and the office park development was begun. By 1974, only the 100-foot buffer zone of natural woodland mentioned in the memorandum separated the Homeowners' backyards from the office park. Prior to the commencement of this suit, the Mountain Brook Planning Commission rezoned the buffer zone from "residential" to "office park," and the Developers announced plans to clear-cut the buffer zone and to construct an addition to the office part on it. Consent from 90 percent of the adjoining property owners on Devon and Poinciana was not obtained.
The Homeowners then filed this suit for a declaratory judgment and for preliminary and permanent injunctions against the Developers. The complaint avers that the action proposed by the Developers would constitute a breach of a promise to maintain the 100-foot buffer zone. When the trial court denied relief, the Homeowners appealed.
The Homeowners contend that the Developers are estopped from developing their property in a manner inconsistent with the assurances contained in the memorandum. They argue that they relied on the assurances in ceasing to oppose annexation and that the memorandum misrepresented the situation by treating the assurances as facts and by not mentioning that they were not legally binding on the Planning Commission.
The Developers respond that the Homeowners have failed to prove an essential element of both promissory and equitable estoppel, viz., detrimental reliance on the alleged promises and misrepresentations. They argue further that they made no promises to the Homeowners. The Developers also contend that enforcement of the provisions of the memorandum would deprive them of all legitimate uses of the 100-foot buffer zone and that refusal to enforce the provisions would not lessen the value of the Homeowners' property.
The Homeowners respond that use as a buffer zone is a legitimate use of land and that elimination of the buffer zone would make their properties less desirable as residences.
We hold that the Developers are estopped from developing the buffer zone in any manner inconsistent with the representations made and assurances given in the memorandum of August 15, 1955.
The purpose of equitable estoppel and promissory estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. First National Bank of Opp v. Boles, 231 Ala. 473,479, 165 So. 586, 592 (1936).
Equitable estoppel is
 "`. . . based upon the ground of public policy and good faith, and is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence. The doctrine of estoppel is far reaching in its effect, extending to real as well as personal estate, and embracing almost every enterprise in which men may be engaged.' (Italics supplied.)"
Id., quoting 21 C.J. § 120 pp. 1117-18.
Except for the nature of the conduct on which the estoppel is based, the elements of equitable and promissory estoppel are essentially the same.
Promissory estoppel is defined in Bush v. Bush, 278 Ala. 244,245, 177 So.2d 568, 578 (1964):
 "`A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and *Page 773 
which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' Restatement of the Law of Contracts, § 90, page 110."
This principle has long been recognized in Alabama jurisprudence. See Johnson v. Blair, 132 Ala. 128, 31 So. 92
(1901).
The basic elements of equitable estoppel are stated in Dobbs, Remedies § 2.3 (1973):
 "An estoppel . . . has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct."
A more detailed statement of the elements generally required to support an estoppel is given in 3 Pomeroy, Equity Jurisprudence § 805 (5th ed. 1941):
 ". . . 1. There must be conduct — acts, language, or silence — amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. . . . 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it. . . ."
This language is quoted with approval from Pomeroy's fourth edition in Jacksonville Public Service Corp. v. Calhoun WaterCo., 219 Ala. 616, 618-19, 123 So. 79 (1929).
The undisputed facts of this case support both equitable and promissory estoppel.
The memorandum misrepresented the effect of the Planning Commission's resolution. It failed to mention that the Commission was not legally bound by the resolution and specifically stated that ". . . if there should be a change from Numbers 1 and 2, 90% of you people would have to agree." The truth was that the Commission was free to rezone the buffer zone at any time and in any manner without any regard for the resolution. The resolution, in fact, afforded the adjoining property owners no guarantee of protection.
It is not clear from the record whether the Developers knew the truth at the time the representations were made, but knowledge of the truth must necessarily be imputed to them, since they proposed the resolution and purported to represent the resolution's provisions to the adjoining property owners.
As noted previously, there is no evidence indicating that the Homeowners knew the truth at the time of their reliance upon the Developers' representations. Although some of the Homeowners were present at the meeting at which the resolution was passed, there is no evidence that the qualification was called to their attention. The circumstances of this case, justify their reliance on the Developers' representations. Cf.White v. Glenn, 205 Ala. 303, 87 So. 331 (1921). See Pomeroy, supra at § 810a.
The memorandum did not state the assurances as promises from the Developers, but as provisions of the Planning Commission's resolution. Nevertheless, the memorandum contained sufficient promissory elements to support a promissory estoppel. The memorandum stated, for instance, that the resolution was passed at the Developers' request. *Page 774 
It also stated that it was the desire and purpose of the Developers to develop their property "in a manner which would be an asset to all of the surrounding property owners. . . ." Furthermore, Ervin Jackson testified that part of his purpose in writing the memorandum was ". . . to assure the residents of the good faith of the developers that they would not develop the property in a manner inconsistent with assurances one, two or three . . ." and that the memorandum represented the assurances to the adjoining residents about the Developers' contemplated use of their property. The clear implication of the language of the memorandum was that the assurances represented the future intentions of the Developers with regard to their property. Jackson's testimony supports this inference.
An express promise is not necessary to establish a promissory estoppel. It is sufficient that there be promissory elements which would lull the promisee into a false sense of security. See Dobbs, supra. This principle is illustrated by Bush v.Bush, supra. There this Court stated:
 "Under this doctrine of action in reliance, if Mama Bush did make the will with the reasonable expectation that John and William Bush would act to their detriment in reliance on the will, and they did so act, then the promise; that is, the will; would be binding on Mama Bush and respondents if injustice can be avoided only by enforcement of the promise."
278 Ala. at 245-46, 177 So.2d at 570. A will is not an express promise, but is an expression of a future intention, and that expression is subject to being changed whenever the future intention of the testator changes. Nevertheless, this Court has held that under certain circumstances a provision in a will contains sufficient promissory elements to support a promissory estoppel. The memorandum in this case implied that the assurances represented the future intentions of the Developers and is therefore, like the will in Bush, a basis for promissory estoppel.
Both promissory and equitable estoppel require that the promise or representation of the party estopped be made with the intention, or at least the reasonable expectation, that it will be acted on by the other party. Ervin Jackson testified that the adjoining residents on Devon and Poinciana opposed the annexation and that the resolution was proposed to facilitate the annexation. Furthermore, as noted previously, Jackson testified that one of the purposes of the memorandum was to assure the residents of the Developers' good faith. Common sense and the evidence compel the conclusion that the Developers intended that the residents of Poinciana and Devon cease their opposition to annexation in reliance on the assurances stated in the memorandum.
The evidence also shows that the Homeowners actually did rely on the assurances as stated in the memorandum by ceasing to oppose annexation. It is not clear what effect the elimination of this opposition had on the legislative delegation, but it seems clear that the legislative delegation was concerned with protecting the adjoining residents and that the Developers were concerned enough by the opposition to procure the resolution and to write the memorandum. Regardless, however, of the actual effect of the elimination of the opposition, the Homeowners' ceasing to exercise their right to lobby against proposed legislation before their elected representatives was forbearance of a definite and substantial character. After all, our representative form of government is based on the assumption that the voice of the electorate carries substantial weight with its representatives.
The result of the annexation was that the office park property and the buffer zone were removed from the jurisdiction of Homewood and placed under the jurisdiction of Mountain Brook. Although the Homewood residents could and, on occasion, did appear before the Mountain Brook Planning Commission to oppose changes in the zoning of the buffer zone, the annexation *Page 775 
substantially reduced their power to influence the decisions of the officials who would thereafter control the zoning of the buffer zone. Thus, the annexation, which the Homeowners ceased to oppose in reliance on the assurances and representations of the Developers, was detrimental to the Homeowners.
Finally, if the Developers are permitted to ignore the assurances given in the memorandum, the Homeowners will lose the protection that was the sole reason for their ceasing to oppose annexation and will thereby suffer a serious injustice. At the very least, their property will be less desirable as residences. Moreover, even one of the Developers' own witnesses testified that the buffer zone could be developed in a manner that would lessen the economic value of the Homeowners' property. It is true that some of the Developers' evidence indicated that the development would not necessarily lessen the economic value of the adjoining residences, if developed in a certain manner, but what assurances do the Homeowners have that the buffer zone will be developed in such a manner? Their only assurance of protection to their properties is the memorandum of August 15, 1955.
Enforcing the assurances of that memorandum does not deprive the Developers of all legitimate uses of their property. As the Homeowners contend, use as a buffer zone is a legitimate use, and it is a use which in this instance made possible the very lucrative use of the remaining property. Furthermore, under the memorandum, the Developers are free to develop the buffer zone in any manner that meets with the approval of 90 percent of the adjoining property owners.
REVERSED AND REMANDED.
JONES, ALMON and EMBRY, JJ., concur.
HEFLIN, C.J., concurs in the result.