**INDEPENDENT PETROCHEMICAL CORPORATION, et al., Plaintiffs,**

v.

**AETNA CASUALTY AND SURETY COMPANY, et al., Defendants.**

Civ. A. No. 83–3347.

United States District Court, District of Columbia.

April 15, 1987.

See also, D.C., 117 F.R.D. 283.

Jerold Oshinsky, Robert H. Shulman, Anderson Baker Kill & Olick, Washington, D.C., and Smith & Hulsey, Jacksonville, Fla. (Randy K. Paar, Stephen C. Tupper, Anderson Russell Kill & Olick, P.C., New York City, of counsel), for plaintiffs.

Dennis M. Flannery, W. Scott Blackmer, Alan S. Tenenbaum, Wilmer, Cutler & Pickering, Washington, D.C. for Ins. Co. of North America.

## MEMORANDUM OPINION

ARTHUR L. BURNETT, Sr., United States Magistrate.

Before the United States Magistrate is the motion of Insurance Company of North America (INA) to compel production of seven (7) letters from counsel for Independent Petrochemical Corporation to Peat, Marwick, Mitchell & Co. (hereafter Peat, Marwick), an accountant firm, pursuant to Rule 37 of the Federal Rules of Civil Procedure. INA asserts that the plaintiffs have erroneously refused to allow the production of these documents on the asserted ground that they are covered by the accountant-client and attorney-client privileges and/or work product doctrine.[1]

INA contends that these documents are relevant and may lead to admissible evidence bearing on its defenses of plaintiffs' failure to disclose the existence, nature and extent of the dioxin contamination and the resulting claims in Missouri when the plaintiffs purchased their insurance coverage from INA in 1980–1982. INA further asserts that these documents are relevant to plaintiffs' failure to give INA notice of any dioxin-related occurrence until at least December, 1982. INA also contends that the documents are relevant to its defense that the plaintiffs failed to take any actions to mitigate "expected" damages resulting from dioxin contamination of which they had previous knowledge. In chronological order the letters at issue are dated March 5, 1979, January 8, 1980, January 29, 1981, January 19, 1982 and February 7, 1983. Pursuant to Order of this Magistrate of November 17, 1986, plaintiffs submitted the referenced letters for *in camera* examination. The Magistrate has since conducted an *in camera* review of these documents and reviewed again the arguments advanced by counsel and the judicial precedent relied upon.

### Application of Another Forum's Accountant-Client Privilege in a Pure Diversity Action in the District of Columbia

■ INA contends that the accountant-client privilege does not apply, citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 817, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984) for the proposition that there is no such thing as a common law accountant-client privilege. There is no Federally created accountant-client privilege or a recognized State created privilege in a civil case in a federal court based in whole, or in part, on Federal causes of action. *See generally, Couch v. United States*, 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973); *Falsone v. United States*, 205 F.2d 734 (5th Cir.) *cert. denied*, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953). Indeed, it has been held that in civil cases involving Federal causes of action with pendent State causes of action, the forum State's accountant-client privilege would not be applied. In *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3d

---

1. INA subsequently in its reply brief withdrew its request to compel production of a letter dated February 10, 1984 from Smith & Hulsey to Peat, Marwick, Mitchell & Co. (Doc. No. 140123–140124)

Cir.1982), a case involving antitrust and State law claims, the court held that the Federal rule favoring admissibility, rather than any State law privilege, would be the controlling rule, further stating:

> The question is one of first impression in this court, but our holding is consistent with the legislative history of Rule 501 and the decisions of a number of trial courts. It is also consistent with the general rule in federal practice disfavoring privileges not constitutionally based. *E.g., United States v. Nixon,* 418 U.S. 683 [94 S.Ct. 3090, 41 L.Ed.2d 1039] (1974); *American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1344 (5th Cir.1981).

*Id.*[2] The trial court cases referred to by the *Thompson* court were *Sirmans v. City of South Miami,* 86 F.R.D. 492, 494–95 (S.D.Fla.1980); *FDIC v. Mercantile National Bank of Chicago,* 84 F.R.D. 345, 349 (N.D.Ill.1979); *Robinson v. Magovern,* 83 F.R.D. 79 (W.D.Pa.1979); *Lewis v. Capital Mortgage Investments,* 78 F.R.D. 295, 313 (D.Md.1977); and *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455 (N.D.Cal. 1978). *See also In the Matter of International Horizons, Inc.,* 689 F.2d 996, 1003–1005 (11th Cir.1982) (Bankruptcy judge in Northern District of Georgia not required under Rule 501, Federal Rules of Evidence to apply Georgia's Accountant-Client Privilege, as recognition of the privilege would "significantly undermine the important federal interest in assuring complete and accurate disclosure in federal bankruptcy proceedings.") *Id.* at 1005.

But these authorities are not dispositive here as this case involves only State causes of action in this court solely on the jurisdictional basis of diversity of citizenship. Thus, State law provides the rule of decision and State privilege law will govern. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires in a diversity case that the district court apply the substantive law of the State in which it sits, including State con-

flict of law rules. *See also Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Keene Corp. v. Insurance Company of North America,* 597 F.Supp. 934, 937–38 (D.D.C. 1984). The prevailing view is that State-created privileges involve substantive law under the *Erie* rationale. *See Union Planters National Bank of Memphis v. ABC Records, Inc.,* 82 F.R.D. 472 (W.D. Tenn.1979); *Mitsui & Co. (U.S.A.) Inc. v. Puerto Rico Water Resources Authority,* 79 F.R.D. 72, 75–76 (D.Puerto Rico.1978). *See also Samuelson v. Susen,* 576 F.2d 546, 550 (3d Cir.1978) where the court observed that Rule 501 evolved from a House of Representatives amendment based on the understanding:

> (1) privilege rules were and should continue to be considered substantive for *Erie* purposes;
>
> (2) privilege rules were outcome determinative;
>
> (3) where State law supplied the rule of decision, State rules of privilege should be applied because there is no Federal interest substantial enough to justify departure from State policy; and
>
> (4) State policy regarding privilege should not be thwarted merely because of diversity jurisdiction, a situation, which, if allowed, would encourage forum shopping.

*See* H.R.Rep. No. 650, 93rd Cong., 1st Sess. 9 (1973), U.S.Code Cong. & Admin.News 1974, p. 7075.

As the court in *Mitsui & Co.* observed, Rule 501 of the Federal Rules of Evidence is of no help in resolving the conflict of laws problem. That Rule insofar as relevant here states:

> However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

---

**2.** The court in a footnote referred to Senate Report No. 93–1277 with reference to the legislative history, quoting: "[i]t is also intended that the Federal law of privileges should be applied

with respect to pendent State law claims when they arise in a Federal question case," citing S.Rep. No. 93–1277, *reprinted in* [1974] U.S.Code Cong. & Ad.News 7051, 7059 n. 16.

But this does not answer the question as to which State's law. Rule 501 requires a district court exercising diversity jurisdiction to apply the law of privilege which would be applied by the courts of the State in which it sits. *Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir.1978). The Restatement (Second) of Conflict of Laws, Sec. 139(2) (1971) states:

> (2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

In *Mitsui & Co.* the court suggested that in the majority of cases, using an "interest analysis methodology" a forum court would "conclude that the state in which the assertedly privileged relationship was entered and exclusively sited should be deemed to have the most significant interest in determining whether or not that relationship is privileged." 79 F.R.D. at 78. The presiding judge in this case has observed that in this jurisdiction, "the local law of the state which has the 'more substantial interest' in the resolution of an issue must be applied," citing *Lee v. Flintkote*, 593 F.2d 1275, 1279 n. 16 (D.C.Cir. 1979); *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1030 n. 22 (D.C.Cir. 1973); *Fowler v. A & A Co.*, 262 A.2d 344 (D.C.App.1970); *Stevens v. American Serv. Mut. Ins. Co.*, 234 A.2d 305, 309 (D.C.App.1967). *See also Webster v. Sun Co., Inc.*, 790 F.2d 157, 160 (D.C.Cir.1986).

■ Thus, in the context in which the issue is here presented, we are faced with the question of whether the District of Columbia Court of Appeals would apply Florida's accountant-client privilege statute,[3] although under the District of Columbia law there is no such privilege. Our research has failed to disclose any reported decision by the District of Columbia Court of Appeals dealing with how it would treat another jurisdiction's accountant-client privilege when faced with a conflict of laws issue or any decision as to any other privileges where it has been presented with a conflict between a privilege of another jurisdiction and the absence of any such privilege in the District of Columbia. Thus we must predict how the District of Columbia courts would rule, and as in *Samuelson v. Susen*, 576 F.2d 546, 551 (3d Cir.1978), as the court there said about Pennsylvania, we can say about the District of Columbia Court of Appeals, and that is, generally speaking, the District of Columbia has adopted the "interest analysis" approach to conflict of laws questions. It is noted that the District of Columbia Court of Appeals has cited with approbation and followed the Restatement (Second) of Conflict of Laws in other areas, *see, e.g., Kaiser-Georgetown Community Health Plan, Inc., v. Stutsman*, 491 A.2d 502 (D.C.App.1985); *Estrada v. Potomac Electric Power Company*, 488 A.2d 1359, 1361 n. 2 (D.C.App. 1985), and this strongly suggests it would follow the principles enunciated in Section 139(2) of the Restatement (Second) of Conflict of Laws, which favors admission unless some special reason exists for not doing so. This Magistrate can discern no such special reason, especially since certified public accountants, as auditors, serve an independent function in protecting consumers, stockholders and investors and other members of the public and thus the same type of confidential relationship fostered by the attorney-client privilege is not normally expected.[4] Thus the policy reasons for recognizing such a privilege is not

---

3. Fla.Stat.Ann. § 90.5055, to the extent relevant, provides:

> (2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications with an accountant when such other person learned of the communications because they were made in the rendition of accounting services to the client. This privilege includes other confidential information

obtained by the accountant from the client for the purpose of rendering accounting advice.

4. *See Armour International Co. v. Worldwide Cosmetics, Inc.*, 689 F.2d 134 (7th Cir.1982). There the court noted that the accountant-client privilege is not one commonly accorded and even today, "only a minority of states protect communications to accountants from judicial inquiry." *Id.* at 136.

as strong as with the attorney-client privilege and the physician-patient privilege. Indeed, as of 1978, according to the *Mitsui & Co.* court, only sixteen (16) States and Puerto Rico had enacted accountant-client privilege statutes. Further, as to be discussed *infra*, the State of Texas repealed its accountant-client privilege statute effective September 1, 1983. Thus, it appears that the accountant-client privilege is not well-established and it provides benefits that are slight and do not exceed, on balance, the injury which would impact upon the effective administration of justice. Privilege is an exception to the general rule that the public is entitled to every man's evidence. The Magistrate is of the view and concludes that the District of Columbia Court of Appeals would not sanction the application of Florida's accountant-client privilege statute in a civil case tried in the District of Columbia Superior Court.[5] Furthermore, the Magistrate is of the view that the result as to admissibility of evidence at trial should equally apply with reference to discovery matters. *Armour International Co. v. Worldwide Cosmetics, Inc.*, 689 F.2d 134, 135 (7th Cir.1982); *Mitsui & Co. (U.S.A.) Inc. v. Puerto Rico Water Resources Authority*, 79 F.R.D. 72, 76 (D.Puerto Rico 1978).

■ However, the Magistrate concludes that a more detailed analysis supports the conclusion that Texas law, rather than Florida law, should govern the discoverability of the six (6) letters here at issue. Thus, as an alternate ground of decision, the Magistrate concludes that the letters at issue here are discoverable under Texas law. INA has asserted that Texas is without doubt the State with the most significant relationship to the communications at issue. INA observed that it was Peat,

Marwick's Houston, Texas office, which provided accounting services to Charter International Oil Corporation in rendering administrative support services to Independent Petrochemical Corporation. It was Peat, Marwick's Houston, Texas office which received the communications in question. Thus, INA argues, with persuasion, that the accountant-client relationship between Independent Petrochemical Corporation and Peat, Marwick was centered in Texas. Furthermore, at the time of the submission of this discovery dispute to the Magistrate, the letters at issue were located in Texas.[6]

It is not incongruous to hold that Texas law should apply rather than Florida law, were the District of Columbia Court of Appeals to recognize the law of accountant-client privilege of another State rather than its own law as being controlling. As the presiding judge in this very case has previously recognized the laws of different States may apply in this case depending on the precise issue being adjudicated. *Independent Petrochemical Corporation et al. v. Aetna Casualty & Surety Company, et al.*, 674 F.Supp. 354 (D.D.C. 1987) choice of law discussion, at 356–57. As there stated, courts are not bound to decide all issues under the local law of a single State; rather, each issue is to receive separate consideration. *Id.* at 356. *See also* Restatement (Second) of Conflict of Laws § 188 (1971). Choice of law involves examination not simply of various State interests generally, but, as stated in *Estrada v. Potomac Electric Power Company*, 488 A.2d 1359, 1361 (D.C.App.1985) examination of their interests regarding the various distinct issues to be adjudicated, the court in *Estrada*, specifically citing with approv-

---

5. The District of Columbia Court of Appeals recently had occasion to observe:

   "The forum State's interest in the fair and efficient administration of justice" together with the "substantial savings [that] can accrue to the State's judicial system" when its judges are "able to apply law with which [t]he[y] [are] thoroughly familiar or can easily discover," tilt the balance in favor of applying the law of the forum state when the interests of both jurisdictions are equally weighty. *See*

   *Allstate [Insurance Co. v. Hague]*, 449 U.S. [302] at 326 & n. 14, 101 S.Ct. [633] at 647 & n. 14 [66 L.Ed.2d 521 (1981)] (Stevens, J., concurring).
   *Kaiser Georgetown Community Health Plan, Inc. v. Stutsman*, 491 A.2d 502, 509 n. 10 (D.C.App. 1985).

6. It is immaterial that after being sent to Houston, Texas some of the documents may have been sent to Peat, Marwick's Florida office.

al *In re Air Crash Disaster at Washington, D.C.,* 559 F.Supp. 333, 341 (D.D.C. 1983).

Here, INA argues that under Texas law the letters at issue would be admissible in evidence if they contained relevant information, for Texas repealed former Tex. Rev.Civ.Stat.Ann. Art. 41a–1, § 26 (Vernon 1973 & 1983 Supp.) which had embodied an accountant-client privilege, effective September 1, 1983. The defendant, INA, correctly argues that it is a well-settled principle that Texas courts apply rules affecting the admissibility of evidence as they exist at the time of trial, citing *Smith v. State,* 418 S.W.2d 893, 896 (Tex.Civ.App.1967). This conclusion is supported by subsequent Texas appellate court decisions. *See, e.g. Ex Parte Abell,* 613 S.W.2d 255 (Tex.1981); *Exxon Corporation v. Brecheen,* 526 S.W.2d 519 (Tex.1975); *Wimberly Resorts Property, Inc. v. Pfeuffer,* 691 S.W.2d 27 (Tex.App. 3 Dist.1985). *Wimberly* specifically dealt with repeal of a statute dealing with the psychiatrist-patient privilege and the replacing of it with a narrower rule approved by the Texas Supreme Court. Observing that the rule change would have the same binding effect as a decision of the Texas Supreme Court, and that the change in law was procedural in nature, the Texas Court of Appeals concluded that the new Rule 501 was applicable and governed the disclosure of the communications at issue rather than the former article 5561h which had been in existence at the time the communications occurred. Thus, it seems clear that under Texas law the letters here would not be protected under an accountant-client privilege, even though written at the time Texas had such a privilege.[7]

### Applicability of The Attorney-Client Privilege

INA has cogently argued that the attorney-client privilege simply does not apply as Peat, Marwick, Mitchell & Co. was not the client, nor was it an agent of the client, Independent Petrochemical Corporation, but rather it was an independent auditor of the financial affairs of the corporation.[8] INA further asserts that even if the documents contained privileged communications between Independent Petrochemical Corporation and its attorneys, the disclosure of the information to the accountants was inconsistent with a confidential relationship and thus constituted a waiver of that privilege, citing *Permian Corp. v. United States,* 665 F.2d 1214, 1219 (D.C. Cir.1981); *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) (disseminating otherwise privileged communications to an accountant waives the privilege). *See also United States v. El Paso Co.,* 682 F.2d 530, 540 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984) (finding waiver of privilege when documents disclosed to independent auditors). Counsel for INA have argued that these documents were generated for the purpose of filing 10 K statements in compliance with Federal securities laws. The Magistrate has examined the documents *in camera* and it clearly appears that they were written in connection with the rendering of accounting services by Peat, Marwick. The Magistrate concludes that they were not intended to convey confidential attorney-client information, but even if they were, such a privilege was waived by the disclosure.[9]

7. *See also Parker v. United States,* 235 F.2d 21 (D.C.Cir.1956) where the court held that the trial court had properly applied an amendment effective August 9, 1955, which removed the prohibition of disclosure of confidential information by physicians in criminal trials when the defendant raised the defense of insanity.

8. The Supreme Court recently stated in *United States v. Arthur Young & Co.,* 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984):
   The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders as well as to the investing public. This "public watchdog" function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.
   *Id.* 465 U.S. at 817–18, 104 S.Ct. at 1503.

9. Further, the attorney-client privilege permits non-disclosure of an attorney's opinion or advice only in order to protect the secrecy of underlying facts obtained from the client. *Mead Data Central Inc. v. United States Department of the Air Force,* 566 F.2d 242, 254 n. 28 (D.C.Cir.1977). From the Magistrate's *in cam-*

## Applicability of The Work Product Doctrine

■ INA contends that Independent Petrochemical Corporation in arguing that the work product doctrine applies to the Peat, Marwick documents, proposes a sweeping expansion of that doctrine that is contrary to well-established law. INA correctly argues that the scope of the work product doctrine is limited and that the purpose of the doctrine, or privilege as termed by some writers, is not to protect any interest of the attorney, as such, or his mental impressions or conclusions in the abstract, "but to protect the adversary trial process," citing *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980). As our own Circuit Court of Appeals there stated, "it is firmly established that there is no privilege at all unless the document was initially prepared in contemplation of litigation, or in the course of preparing for trial." *Id.* at 865. *See also Jordan v. United States Department of Justice,* 591 F.2d 753, 775 (D.C.Cir.1978) (en banc).

■ From the Magistrate's *in camera* examination it clearly appears that these six (6) letters were not prepared for any trial and the Magistrate can not find in them anything reflecting Independent Petrochemical Corporation's litigation strategy in either the underlying dioxin cases nor with reference to future insurance coverage litigation such as involved in this case. Nor is there sufficient focus and precision in their content to show that litigation over insurance coverage was then realistically contemplated by the attorney author of the letters. It clearly appears that these Peat, Marwick documents were not prepared to assist Independent Petrochemical Corporation in present, or reasonably anticipated, litigation but rather they were prepared to assist Peat, Marwick & Mitchell & Co. in the performance of regular accounting work done by such accounting firms. The work product doctrine does not extend to every communication by an attorney that merely may concern litigation in some way, if such a communication was not made as a part of the adversary trial process.[10] The motivating purpose behind the creation of the document is thus of critical importance. *See Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C.1982).[11] The Magistrate's *in camera* examination of the six (6) letters at issue satisfies him that they were prepared for accounting-business purposes and not for litigation purposes.[12]

For the foregoing reasons, the Magistrate concludes that INA's motion to compel production should be GRANTED. A separate Order entered this date will require production no later than April 28, 1987, unless a motion for reconsideration is filed on or before that date for the district judge to review this ruling.

---

*era* examination of the six (6) letters it does not appear that there are really any confidential facts received from the client, Independent Petrochemical Corporation, expressed therein or which can be inferred.

**10.** The Advisory Committee Note to Rule 26(b)(3) of the Federal Rules of Civil Procedure, expressly provides that "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."

**11.** The Magistrate agrees with counsel for INA that Judge John H. Pratt's ruling in *Carey-Canada, Inc. v. California Union Insurance Co.,* No. 83–1105 (D.D.C. May 19, 1986) is distinguishable,

as the attorneys in preparing the drafts of the footnotes for inclusion in an annual report there at issue were primarily motivated in the selection of the wording thereof as to the effect it would have on pending litigation. From the Magistrate's *in camera* examination of the six (6) letters at issue here the Magistrate concludes that the primary motivation for their creation had nothing whatsoever to do with any effect on the underlying dioxin litigation in Missouri but was to allow Peat, Marwick to perform accounting services for Independent Petrochemical Corporation.

**12.** Applying this rationale, the work product doctrine would not apply to advice or opinion letters rendered by an attorney with respect to a routine procedure in the securities field and not done with litigation in mind.