In re JOE MORGAN, INC., Debtor.

UTILITY CONTRACTORS FINANCIAL SERVICES, INC., Plaintiff,

v.

AMSOUTH BANK, N.A., Sunburst Bank, and Joe Morgan, Inc., Defendants.

SUNBURST BANK, Counter Plaintiff,

v.

UTILITY CONTRACTORS FINANCIAL SERVICES, INC., Counter Defendant.

Bankruptcy No. 89–01809.
Adv. No. 89–0255.

United States Bankruptcy Court, S.D. Alabama.

March 28, 1991.

---

**2.** The release of a judgment lien is a transfer. See *In Re Rodman, Inc.*, 792 F.2d 125 (10th Cir.1986); 11 U.S.C. 101(50).

Victor Hudson and William W. Watts, Mobile, Ala., for plaintiff.

James E. Robertson, Jr., Mobile, Ala., for defendant, Sunburst Bank.

David Hudgens, Mobile, Ala., for defendant, AmSouth Bank, N.A.

Robert H. Allen, Mobile, Ala., trustee.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came on for hearing on the Complaint of the Plaintiff, Utility Contractors Financial Services, Inc., for determination of priority of its claim against the estate of the Debtor, Joe Morgan, Inc., and distribution of proceeds from the collection of accounts receivable of the Debtor. The Defendant, Sunburst Bank, counterclaimed for distribution of proceeds from the collection of accounts receivable by the Trustee and AmSouth Bank, and declaration of a prior perfected security interest of the Defendant, Sunburst Bank. The Plaintiff, Defendant and Trustee stipulate the validity of the first lien of the Defendant, AmSouth Bank, and the satisfaction of their debt from the proceeds of the Debtor's accounts receivable.

After due consideration of the pleadings, affidavits, arguments of counsel, testimony and briefs subsequently submitted, this Court finds and concludes as follows:

## FINDINGS OF FACT

The Debtor, Joe Morgan, Inc. ("JMI"), executed and delivered to Sunburst Bank ("Sunburst")[1] a promissory note and security agreement to Sunburst for $100,000.00

---

**1.** Sunburst Bank is a corporation formed under the laws of the State of Delaware with its principal place of business in Mississippi.

with interest on October 14, 1988. On October 27, 1988, JMI executed a second promissory note and security agreement for $300,000.00 with interest. JMI delivered a third promissory note and security agreement to Sunburst for $407,043.43 with interest on December 19, 1988.

On March 15, 1989, Sunburst filed with the Secretary of State of Alabama a security agreement and financing statement including "[a]ll of debtor's accounts, whether now existing or hereafter arising or acquired, whether or not earned by performance; all chattel paper owned by debtor or arising from conversion of accounts covered by the security agreement, whether now existing or hereafter arising or acquired...." JMI delivered to Sunburst a fourth promissory note and security agreement on May 22, 1989 for $399,910.00 with interest. The May 22, 1989 note was a renewal and extension of JMI's three previous notes to Sunburst secured by the financing statement filed with the Alabama Secretary of State on March 15, 1989.

In March 1989, Joe Morgan, ("Morgan") President of JMI, met with Robert Watters, ("Watters") Vice President of Utility Contractors Financial Services, Inc., ("UCON")[2] to discuss UCON's possible purchase of JMI's accounts receivable. UCON was a factor which purchased receivables at a five percent discount of their face value from utility company contractors. UCON collected the factored receivables from the account debtors. All payments collected by UCON from the account debtors were made by check.

UCON began to purchase JMI's accounts receivable in March or April 1989. JMI did not inform UCON of Sunburst's prior security interest in JMI's accounts receivable. The proceeds from the sale of the Debtor's accounts were initially deposited by wire transfer into JMI's account with South-Trust Bank, and after June 1989, in JMI's operating account with Sunburst.

In April 1989, Watters accompanied Morgan to a meeting with John Turner, an officer at AmSouth Bank ("AmSouth"). AmSouth held a first lien on JMI's accounts receivable which was superior to Sunburst's interest. The validity of AmSouth's superior interest in JMI's account proceeds is not disputed. At the meeting with Turner, Watters became aware of JMI's outstanding loan from AmSouth, AmSouth's security interest in JMI's receivables and AmSouth's refusal to loan JMI any additional funds.

Watters first learned of Sunburst's security interest in JMI's accounts receivable on July 17, 1989 at a meeting with Morgan and Doug McCrory, Senior Vice President of Sunburst. Sunburst had been unaware of UCON's factoring of JMI's accounts receivable until this meeting, and was informed that UCON would not continue factoring JMI's receivables after August 1, 1989.

Watters discussed UCC filing requirements with two attorneys and received conflicting advice about the necessity of searching UCC records for prior security interests in accounts receivable and filing a financing statement. After the meeting with Morgan and Doug McCrory, Watters filed a financing statement covering JMI's accounts receivable with the Secretary of State of Alabama on July 19, 1989.

Sunburst and UCON representatives met to discuss JMI's need for working capital on July 20, 1989, and agreed that UCON should continue to factor JMI's accounts receivable until August 1, 1989 on the following conditions: 1) the funds received by JMI would be used to cover payroll; and 2) JMI would generate new receivables in an amount greater than the amount being factored. Based on this understanding, UCON continued to factor JMI's accounts receivable.

The Debtor filed a Chapter 11 petition on September 13, 1989. Shortly before JMI's bankruptcy petition, AmSouth notified and instructed JMI's account debtors to submit payment of their accounts to AmSouth. Pursuant to successive cash collateral orders of this Court, the proceeds collected were used to retire AmSouth's secured debt of $634,071.66 in principal and $19,-

2. UCON is a Nevada Corporation with its principal place of business in Tucson, Arizona.

674.63 in interest. The Debtor converted to a Chapter 7 proceeding on February 16, 1990. This Court ordered AmSouth to continue to collect and hold the proceeds from JMI's accounts for the Trustee pending further order of the Court.

UCON factored $1,428,706.27 in JMI's accounts receivable from April 14, 1989 to July 12, 1989. UCON factored $837,195.42 of JMI's accounts from July 20, 1989 to August 31, 1989. UCON factored a total of $2,511,481.01 in JMI's accounts receivable and collected $2,099,209.56. The amount owed UCON for accounts purchased but uncollected is $412,271.45. As of the date of its filing on September 13, 1989, JMI owed Sunburst $399,910.00 in principal and $15,613.44 in interest. UCON filed a complaint to establish the priority of its claim in the proceeds held by AmSouth and Sunburst counterclaimed to assert its rights in the proceeds.

## CONCLUSIONS OF LAW

### I. Pre–July 17, 1989 Accounts

■ UCON is a holder in due course under § 7–9–309 of the Code of Alabama (1975) and therefore has priority over Sunburst's prior security interest. Section 7–9–309 provides: "[n]othing in this article limits the rights of a holder in due course of a negotiable instrument (section 7–3–302) ... and such holders or purchasers take priority over an earlier security interest even though perfected. Filing under this article does not constitute notice of the security interest to such holders or purchasers."

Section 9–309 of the Uniform Commercial Code protects a holder in due course against the claim of a prior perfected security interest. In *Thorp Commercial Corp. v. Northgate Indus. Inc.*, 490 F.Supp. 197 (D.Minn.1980), *rev'd on other grounds*, 654 F.2d 1245 (8th Cir.1981), a debtor gave a security interest in its accounts receivable to a primary secured party. Subsequently, the debtor paid a secondary secured party by endorsing checks paid by account debtors on the accounts

receivables which were the subject of the primary security interest. The court held that if the secondary secured party met the requirements of a holder in due course, it would have priority over the primary secured party under § 9–309. *Id.* at pp. 203–204. Similarly, a Texas state court in *Dallas Bank & Trust Co. v. Frigiking, Inc.*, 692 S.W.2d 163 (Tex.Ct.App.1985) allowed a second-in-time secured party to assert its holder in due course status against a prior security interest and keep payments made by check from the debtor. *See also Citizens Valley Bank v. Pacific Materials Co.*, 263 Or. 557, 503 P.2d 491 (1971).

The Permanent Editorial Board for the Uniform Commercial Code recently issued a supplementary commentary elaborating on § 9–309.[3] The Board explains:

> The operation of this section can be seen when two secured parties have a perfected security interest in an account, chattel paper, or general intangible and the secured party that does not have priority receives a payment by check directly or indirectly from the account debtor. If the recipient takes the check under circumstances that give the recipient the rights of a holder in due course (Section 3–302), then the recipient's security interest in the check will take priority over the competing security interest and the recipient will be entitled to keep the payment.

Proposed Commentaries of the Permanent Editorial Board for the UCC, 3 U.L.A.1990 Supplement, pp. 258–59.

Section 7–3–302 of the Code of Alabama (1975) defines a holder in due course as a holder who takes an instrument: 1) for value; 2) in good faith; and 3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. The checks received by UCON from JMI's account debtors were taken for value, in good faith, and without knowledge of Sunburst's prior security interest. Therefore UCON stands as a holder in due course against Sunburst's prior security interest as to JMI's

---

3. Alabama has not adopted the Board's new commentary.

accounts receivable factored before July 17, 1989.

## II. Post–July 17, 1989 Accounts

■■■ Sunburst's acquiescence in July 1989 to the factoring agreement between UCON and JMI estops Sunburst's assertion of its security interest in the proceeds held by AmSouth. Under the doctrine of equitable estoppel, a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial nature on the part of the promisee, and which does cause such action or forbearance, is binding if injustice can be avoided only by enforcement of the promise. *Mazer v. Jackson Ins. Agency*, 340 So.2d 770, 772–73 (Ala.1976). Equitable estoppel results when: 1) the actor, with knowledge of the true facts, communicates information in a misleading way by word, conduct or silence; 2) the other party relies upon the communication; and 3) the other party would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct. *Ex parte Baker*, 432 So.2d 1281, 1285 (Ala. 1983) (*citing Mazer*, 340 So.2d at 773).

Sunburst's officials agreed to allow UCON to factor JMI's accounts receivables in order to allow JMI to cover its payroll expenses and remain in business on condition that the proceeds collected be applied to payroll expenses and that JMI generate more accounts than UCON factored. Relying on Sunburst's agreement, UCON continued to factor JMI's accounts receivable until JMI filed its bankruptcy petition. Therefore, Sunburst is estopped from asserting its prior perfected security interest against UCON's interest in the proceeds of JMI's account after July 17, 1989.

### SUMMARY

UCON's claim in the proceeds of JMI's accounts receivable for $412,272.45 has priority over Sunburst's previously perfected security interest. UCON's complaint for distribution of proceeds from the collection of accounts receivable is due to be granted. Sunburst's counterclaim for distribution of proceeds from the collection of accounts receivable collected by the Trustee and AmSouth and declaration of priority of a perfected security interest held by Sunburst Bank is due to be denied.