**Charles Laurendine WHATLEY,**
**Plaintiff,**

v.

**MERIT DISTRIBUTION SERVICES,**
**et al., Defendants.**

**Margaret H. Whatley, Plaintiff,**

v.

**Merit Distribution Services,**
**et al., Defendants.**

Civ.A. Nos. 99–0166–CB–S, 99–0167–CB–S.

United States District Court,
S.D. Alabama,
Southern Division.

Feb. 16, 2000.

---

Joseph M. Brown, Jr., George McCormick Dent, III, Cunningham, Bounds, Yance, Crowder & Brown, Mobile, AL, for Charles Laurendine Whatley, plaintiff.

Donald F. Pierce, David P. York, Pierce, Ledyard, Latta & Wasden, P.C., Mobile, AL, for Merit Distribution Services, Inc., Kenneth G. Roberts, McLane Company, Inc., defendants.

### ORDER

BUTLER, Chief Judge.

This matter is before the Court on the Plaintiffs' Application for Rehearing and Motion to Alter or Amend Order and responsive brief (99–166, Docs. 78 and 86; 99–167, Docs. 69 and 77) and Defendants' Motion to Strike, or in the Alternative, Motion to Dismiss Plaintiffs' Application for Rehearing (99–166, Doc. 83; 99–167, Doc. 73).

### Procedural and Factual Background

These suits, consolidated for the purposes of discovery, arise out of a deadly accident occurring November 16, 1998, on U.S. 45 in Mobile County, Alabama. Defendant Kenneth Robertson claims that after jack-knifing his tractor trailer rig to avoid a vehicle stopped in the northbound lane, he left his tractor trailer to call the police and his employer, Merit Distribution. During this time, a vehicle driven by Plaintiff's decedent, Tyler Whatley, and occupied by Plaintiff Charles Whatley struck the tractor trailer. Tyler Whatley died and Charles Whatley was injured as a result of the collision.

In August 1999, Defendant Robertson moved to quash subpoenas issued to Communicare, where Robertson was under the care of a Mississippi psychiatrist, and to Charter Hospital and Behavioral Health Systems, where Robertson was under the care of two Tennessee psychologists, on the grounds of privilege. Initially, both Defendant and Plaintiff argued that Mississippi and Tennessee privilege law, the states where the communications took place, applied.[1] United States Magistrate Judge William H. Steele denied Defendant Kenneth Robertson's motions to quash subpoenas on October 19, 1999, finding that Robertson waived any physician-patient or psychiatrist-patient privilege recognized by Mississippi or Tennessee by executing the form identified as "Applicant's Certification and Agreement" contained in his employment application.

On November 2, 1999, Defendant Robertson appealed Judge Steele's denial of the motions to quash. On November 23, 1999, this Court found that the Magistrate Judge's denial was in error and that Robertson did not waive his privilege in his employment application under Mississippi or Tennessee law. This Court subsequently set aside the Magistrate Judge's order and granted the motions to quash (99–167, Doc. 65).

On December 3, 1999, Plaintiffs moved this Court to reconsider or to alter or amend the order on the grounds that (1) this Court should have *broadly* construed the issue of waiver in this context (driver of commercial motor vehicle), and/or (2) by setting aside Judge Steele's order *and* simultaneously granting the motions to quash, Plaintiffs were denied consideration of their argument that the Federal Motor Carrier Safety Regulations supercede or preempt state privilege laws.[2] Additionally, Plaintiffs requested oral argument in their application for rehearing. In light of this request and upon realization that a potential choice of law issue not previously addressed by the parties existed, this Court set the matter for hearing. The hearing was held on January 24, 2000.

---

1. Plaintiffs actually argued that state privilege law did not apply at all, *see infra* I preemption argument. However, in the event state privilege law was found applicable, Plaintiffs appeared to argue that Mississippi and Tennessee law controlled.

2. In the November 23 order, this Court found that the issue was not properly on appeal because the argument had been presented to Judge Steele and in order to find the privileges waived, he must have found the privileges applicable.

There are four issues to be resolved: (1) whether the Federal Motor Carrier Safety Regulations preempt state privilege law, (2) if not, which state privilege law, Mississippi and Tennessee or Alabama, applies to the medical records at issue, (3) applying the correct state law, whether Robertson waived his privilege in his employment application, (4) if not, whether Robertson should nevertheless be estopped from asserting the privilege because of misrepresentations or omissions made on his employment application. The Court considers the issues in turn.

## I. Do the Federal Motor Carrier Safety Regulations Preempt a State Law Psychologist or Psychiatrist–Patient Privilege

Under the Federal Motor Carrier Safety Act (FMCSA), 49 U.S.C. §§ 31101–31162 (1994), Congress directed the Department of Transportation (DOT) to "proscribe minimum safety standards for commercial motor vehicles," and to ensure that the "physical condition of operators of commercial motor vehicles is adequate to enable them to operate such vehicles safely." 49 U.S.C. § 31136(a), (a)(3), *See also Graef v. Chemical Leaman Corp.*, 106 F.3d 112, 115 (5th Cir. 1997). Accordingly, the DOT enacted regulations, the Federal Motor Carrier Safety Regulations (FMCSR), 49 C.F.R. 390 *et seq.* which, among other things, establish the physical qualifications for drivers. *See* § 391.43.

Plaintiffs argue that the Federal Motor Carrier Safety Regulations preempt or supercede state privilege law.[3] Plaintiffs point out that these regulations obligate motor carriers to ensure that only medically and physically qualified drivers are operating vehicles in interstate commerce. Plaintiffs argue that a state created psychiatrist or psychologist-patient privilege conflicts with the policy behind the regulations, and thus, Plaintiffs appear to make a case for conflict preemption. In essence, they contend that the recognition of this state privilege law would undermine the purposes of the FMCSR by precluding a motor carrier from conducting a meaningful inquiry into the qualifications of a person applying to drive a commercial motor vehicle.

The touchstone of any preemption analysis is congressional intent. *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). "If Congress so intends, '[p]reemption … is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and its purpose.'" *Boyes v. Shell Oil Products Co.*, 199 F.3d 1260, 1266 (11th Cir. 2000) (citing *Gade*). Conflict preemption, in which state law is preempted *by implication,* occurs when it is physically impossible to comply with both federal and state law or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade,* 505 U.S. at 98, 112 S.Ct. 2374 (citations and

**3.** Intermingled with the preemption argument is Plaintiffs' contention that under Fed.R.Evid. 501, federal privilege law rather than state privilege law controls. Rule 501 provides that "[e]xcept as otherwise required by the Constitution … or provided by Act of Congress or in rules prescribed by the Supreme Court … the privilege of a witness, [or] person … shall be governed by the principles of common law as they may be interpreted by the courts of the United States … However, in civil actions and proceedings, with respect to the element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, [or] person … shall be determined in accordance with State law." Fed. R.Evid. 501. Plaintiffs argue that the second sentence of Rule 501 does not apply because Tennessee and Mississippi law do not supply the rules of decision in this diversity action where Alabama substantive law applies. The Court notes that Plaintiffs' position is due, at least in

part, to the initial failure of the parties and the Court to determine the proper state law at issue. However, having said that, the Court rejects Plaintiffs' interpretation of Rule 501. This a diversity action in which state substantive law applies. If a privilege law applies, it is state law. *Somer v. Johnson*, 704 F.2d 1473, 1478–79 (11th Cir.1983); *Shipes v. BIC Corp.*, 154 F.R.D. 301 (M.D.Ga.1994) (when state law substantive law applies, state privilege law applies); *Karp v. Cooley*, 493 F.2d 408 (5th Cir.1974); *Massachusetts Mut. Life. Ins. Co. v. Brei*, 311 F.2d 463 (2d Cir.1962) (state rule as to patient-physician privilege governs federal court in diversity action). Nonetheless, the Court points out that Plaintiffs are not necessarily better served by arguing federal privilege law; the Supreme Court of the United States recognizes a psychotherapist privilege which extends to licensed psychologists and psychiatrists. *See Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

quotations omitted); *Lewis v. Brunswick Corp.*, 107 F.3d 1494, 1500 (11th Cir.1997) (citations and quotations omitted); *Teper v. Miller*, 82 F.3d 989, 993 (11th Cir.1996) (citations omitted). In particular, conflict preemption is present when "state law ... interferes with the methods by which the federal statute was designed to reach [its] goal." *International Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). Therefore, if state privilege law interferes with the methods by which Congress intended the FMSCA or its regulations to ensure safety, state privilege law must yield.

■ The Court finds that the Plaintiffs have failed to sufficiently demonstrate that a state psychiatrist or psychologist-patient privilege actually conflicts with the FMCSA or its regulations. It is clear that in the enactment of the FMCSA Congress intended to ensure safety by providing that only physically qualified drivers are allowed to operate a motor carrier vehicle. It is not clear, however, why it is necessary to force a driver or applicant to involuntary relinquish medical records to plaintiffs in a civil suit to achieve this purpose. Certainly, the purposes behind the FMCSA are, and can be, served by other means. In fact, the Court finds that it is the regulations *themselves* which proscribe the methods by which the underlying objectives of the FMCSA are to be carried out, and Plaintiffs fail to point to any regulation, nor can the Court find one, which requires motor carriers to obtain an applicant's medical records, especially psychiatric records. Instead, the FMCSR provides for a medical certification process. Under § 391.41 and § 391.43 of the regulations, a medical examiner is directed to perform a physical examination of an applicant to determine if he or she meets the physical qualifications outlined in the regulations, and thereafter, the examiner issues a "certification." In short, the Court concludes that no conflict exists between the operation of state privilege law and the Federal Motor Carrier Safety Act or the Federal Motor Carrier Safety Regulations.

## II. What State Privilege Law Applies

■ In the absence of preemption and upon resolution of the vertical choice of law

issue (See Footnote 2), the Court now turns to what state privilege law should apply to the medical records at issue. As noted earlier, Fed.R.Evid. 501 provides that "in civil actions and proceedings, with respect to the element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, [or] person ... shall be determined in accordance with State law." The language of Rule 501, however, fails to answer the horizontal choice of law question presented in this case, i.e. *"which* state's privilege rules are to be applied under th[is] state law proviso?"* 23 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure*, Evidence § 5435 (emphasis added).

When approached with a choice of law issue regarding privileges, most federal courts apply the conflict/choice of law doctrines of the state in which it sits to determine which privilege law applies. *Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir.1978); *Union Planters Nat'l Bank of Memphis v. ABC Records, Inc.*, 82 F.R.D. 472, 473 (W.D.Tenn.1979); *Independent Petrochemical Corp. v. Aetna Cas. and Sur. Co.*, 117 F.R.D. 292, 295 (D.D.C.1987); *Abbott Laboratories v. Airco, Inc.*, 1985 WL 3596 (N.D.Ill.); *Newton v. National Broadcasting Co., Inc.*, 109 F.R.D. 522, 528 (D.C.Nev.1985). This approach is the most appropriate in light of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (a federal court in a diversity case must follow the conflict of law rules of the state in which it sits). However, it poses additional problems because very few states have established a choice of law doctrine regarding privileges. Such is the case in Alabama. In fact, this Court has found no Alabama case which considers which state privilege law should govern when the law of two or more states is implicated.

Nonetheless, the Court concludes that if faced with the dilemma, Alabama courts would apply Alabama privilege law to the medical records at issue. "The choice-of-law rule traditionally applied by Alabama in tort cases is lex loci delicti the substantive law of

the place of the wrong." *Bryant v. Cruises, Inc.*, 6 F.Supp.2d 1314, 1317 (N.D.Ala.1998). While the Restatement (Second) of Conflict of Laws and other states' choice of law doctrines grapple with what state has the most significant relationship to the communication[4] and which state is most interested in having the policy underlying the privilege applied,[5] the Alabama Supreme Court remains faithful to the principle of lex loci delicti. In fact, when faced with whether to abandon the principle of lex loci delicti in favor of the "most significant relationship" approach advocated by the Restatement, the Alabama Supreme Court declined finding that "[t]he newer approaches to choice of law problems are neither less confusing nor more certain than the traditional approach." *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So.2d 819, 823 (Ala.1991). The Court notes that in choosing Alabama law to govern this discovery dispute, Robertson is not deprived of a privilege. Finally, the choice of Alabama law is necessary for the efficient disposition of other discovery matters presented in this case.

### III. Did Robertson Waive his Psychologist or Psychiatrist–Patient Privilege Under Alabama Law

■ Alabama Code § 34–26–2 provides that "the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."[6] In order for a person to impliedly waive this privilege under Alabama law, "the holder of the privilege must objectively manifest a clear intent not to rely upon the privi-

lege." *Jordan v. State*, 607 So.2d 333, 336 (Ala.Crim.App.1992). Thus, while the privilege is not an "impenetrable shield," it is not "easily outweighed by competing interests." *Ex parte United Service Stations, Inc.*, 628 So.2d 501 (Ala.1993). In fact, Alabama courts hold that a *plaintiff* does not waive the privilege even when he seeks damages for emotional pain and anguish. *Id.*

■ As noted in this Court's November 23 order, the only waiver language in Robertson's employment application provides that he authorized "persons or organizations referenced in this application" to release information regarding the subjects of the application. However, Robertson did not reference Communicare or Charter, or any of its psychiatrist or psychologists in the application. Under these circumstances, the Court is unwilling to find that Robertson manifested an intention to waive his privilege.

### IV. Should Robertson be Estopped from Asserting the Psychiatrist or Psychologist–Patient Privilege Because of Misrepresentations and/or Omissions on his Employment Application

The "History and Physical Examination" portion of Merit's employment application requested the following information: Past History: II. Other Hospitalizations or Institutional Treatment (Inpatient and Outpatient). Robertson answered "None," and certified by signature that the medical history he provided is "true, accurate, and complete" to the best of his knowledge. In addition, on the question which asked Robertson to list "the prescription medications currently using," Robertson listed only "syntheoid, 1 mg." According to Plaintiffs, both representations were false. Thus, the question becomes, "Can Robertson hide behind the psychiatrist

---

**4.** *Hill v. Huddleston*, 263 F.Supp. 108 (D.Md. 1967) (applying the law of the state with the most significant relationship with the communications made to a psychiatrist in Maryland); *Mitsui & Co., Inc. v. Puerto Rico Water Resources Auth.*, 79 F.R.D. 72 (D.P.R.1978).

**5.** *See Hyde Constr. Co. v. Koehring Co.*, 455 F.2d 337, 340 (5th Cir.1972) (applying Mississippi's "center of gravity" test to determine which forum has the greatest interest in the controversy

and in which forum the parties had the most significant relationships concerning the occurrences giving rise to the ligation); *see also Connolly Data Systems, Inc. v. Victor Technologies, Inc.*, 114 F.R.D. 89, 91 (S.D.Cal.1987) (utilizing California's "governmental interest analysis" to determine which state's law to apply).

**6.** Ironically, Alabama's statutory privilege is almost identical to Tennessee's psychologist-patient privilege. *See* Tenn.Code § 63–11–213.

or psychologist privilege to prevent disclosure of records that Merit would have been authorized to obtain by the application's waiver language if Robertson had been truthful?" The Court finds that, in equity, he cannot.

Equitable estoppel operates to prevent a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. *Mazer v. Jackson Ins. Agency,* 340 So.2d 770, 772 (Ala.1976). "Equitable estoppel is '... based upon the ground of public policy and good faith, and is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence. The doctrine of estoppel is far reaching in its effect, extending to real as well as personal estate, and embracing almost every enterprise in which men may be engaged' " 340 So.2d at 772 (quoting 21 C.J.S. § 120). The basic elements of equitable estoppel are: 1) the actor, who usually must have knowledge of the facts, communicates something in a [false or] misleading way, either by words or conduct, or silence; 2) another relies upon that communication; and 3) the other party would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct. *Id.* at 773.

The present situation is unlike the typical situation in which estoppel is evoked in that the party asserting estoppel is not the party that technically relied on the communication. Nonetheless, the Court finds that Merit, and thus the public, relied on Robertson's representations in his application, and it would be inequitable to allow him to "hide" behind these misrepresentations to prevent disclosure of records which would have been discovered had he been truthful. Thus, the Court finds that to determine which records are subject to estoppel, the application should be construed as if Robertson had answered truthfully. In other words, the finding of estoppel does not warrant the production of all of Robertson's psychiatric records, but only those records that relate to "hospitalizations or institutional treatment (inpatient or outpatient)" which occurred on or prior to the date of the employment application. Plaintiffs shall have until **February 25, 2000,** to identify which records should be produced, and Defendants shall have until **March 3, 2000,** to respond if necessary. Thereafter, United States Magistrate Judge Lee shall (1) determine which records are to be produced under the parameters of this order, and (2) order those records to be produced *in camera* to determine which portions are discoverable.